OPINION OF THE COURT
Titone, J.
In this case, the Appellate Division relied on what it perceived to be the "commonsense limits” of the Rosario rule as a basis for affirming a conviction notwithstanding the prosecution’s failure to disclose an "unusual occurrence report.” The issue is whether the report contained statements of a trial witness that would constitute Rosario material. Defendant’s appeal also requires us to consider whether a "commonsense” exception to the Rosario-Consolazio-Jones doctrine should be recognized when the reviewing court deems the information in the undisclosed putative Rosario material too insubstantial or trivial to warrant the reversal of a conviction.
Defendant was charged with murdering an individual named Booker, ostensibly to prevent Booker from revealing another crime that the two men had committed together. The People’s primary witness, Marie Somie, defendant’s girlfriend, testified that defendant and his brother killed Booker in the house that she and defendant shared and then sent the family to a movie while he disposed of the body. According to Somie, who had not personally seen the killing or the deceased’s *368 body, defendant had described the details of the crime to her and then, when she returned from the movie, told her of how he had wrapped Booker’s body in a plastic bag and taken it to the dump. The body was subsequently discovered at the dump by a passerby, and the police were immediately contacted.
Several police officers, including Officer Serra and Detective Daniel, both of whom testified at trial, responded to the call. Daniel, who was the detective assigned to investigate the crime, attempted unsuccessfully to obtain fingerprints from either the bag or the body. Daniel subsequently arrested defendant after speaking with Somie. Daniel also executed a search warrant at the house where the murder was supposed to have occurred and took samples from the carpet in an effort to assist in the forensic aspects of the investigation.
The defense took the position at trial that Somie had fabricated the entire story because she was angry with defendant for refusing to leave his wife for her. According to the defense witnesses, defendant had been at home enjoying his seven-year-old son’s birthday party on the day Somie claimed Booker was killed.
The jury rejected defendant’s alibi defense and found him guilty of second degree murder. He was sentenced on April 25, 1989 to a 25-year-to-life term of imprisonment.
While defendant’s appeal to the Appellate Division was pending, the prosecutor discovered a document entitled "unusual occurrence report addendum” that had not been turned over to the defense during trial.* The document, which purports to be an "unofficial” "confidential” report of information that the author "feeljs] [the commanding officer] should know,” was signed by a Sergeant Maisano and contained the results of a "[fjurther investigation at the scene by the investigating officer” (emphasis supplied), including that officer’s observations of marks on Booker’s body that were possibly indicative of rope burns.
After the document’s existence was revealed, the parties entered into a stipulation whereby it was agreed that the document had not been made available at trial and that it *369 would become part of the record on appeal. Defendant thereafter filed a supplemental brief in which he argued that his conviction should be reversed because his rights under CPL 240.45 and the Rosario doctrine had been violated. In response, the People argued, among other things, that no Rosario violation had been proven because it was unclear whether the "investigating officer” whose statements were referred to in the report was one of the police officers who testified for the People at the trial.
Upon hearing the appeal, the Appellate Division ruled that the prosecution’s failure to disclose Maisano’s "unusual occurrence report” did not require reversal. The court did not find it necessary to determine whether the "investigating officer” was one of the two responding police officers who testified at trial, because, in its view, the material in the report was duplicative of statements contained in other documents that had been provided to the defense. Further, because, in the court’s view, the report "in no way affected the credibility of the police officers who testified at trial, much less the defendant’s guilt or innocence,” " 'the commonsense limits attendant to the Rosario rule militate against reversing [this] murder conviction’ ” (172 AD2d 790, 791, quoting People v Velez, 161 AD2d 823, 824). In reaching this conclusion, the court relied, in part, on People v Ranghelle (69 NY2d 56, 63) and People v Consolazio (40 NY2d 446, 454, cert denied 433 US 914), in which this Court recognized other "commonsense limits” to the Rosario rule of mandatory disclosure (see also, People v Jackson, 78 NY2d 638, 644). However, we conclude that the exception to the Rosario rule that the Appellate Division has posited accords with neither "common sense” nor the principles that inform the long-standing Rosario doctrine. Consequently, assuming that the undisclosed report was, in fact, Rosario material, there should be a reversal.
Initially, contrary to the Appellate Division’s conclusion, the undisclosed report was not merely the "duplicative equivalent” of other material that the defense had been given. While we have recognized an "exception” to the Rosario rule of mandatory disclosure for material that is duplicative (see, People v Jones, 70 NY2d 547, 551, n 3; People v Consolazio, 40 NY2d 446, 454, supra), there continues to be a "strong presumption of * * * discoverability” (People v Ranghelle, 69 NY2d 56, 63, supra) and, consequently, the "exception” has been narrowly circumscribed.
*370 Two documents cannot be "duplicative equivalents” if there are variations or inconsistencies between them (id., at 65). Further, "[statements are not the 'duplicative equivalent’ of previously produced statements * * * just because they are 'harmonious’ or 'consistent’ with them” (id., at 63). Indeed, a statement that is consistent with other disclosed material but omits details or facts cannot be considered the "duplicative equivalent” of the disclosed material, since omissions often furnish important subjects for cross-examination (id., at 64). Finally, since the purpose of Rosario disclosure is to provide the defense with material for cross-examining specific prosecution witnesses, the fact that withheld information was available through another disclosed document embodying someone else’s statements is irrelevant and cannot serve to remedy the harm caused by the prosecution’s failure to disclose.
Here, assuming that the withheld report contained statements made by one of the police officers who testified, it cannot be considered duplicative of other material in the defense’s possession because none of Daniel’s disclosed statements mentioned the rope-burn marks that were mentioned in the withheld report. Although the rope-burn marks were mentioned in the autopsy report, that report was not prepared by an investigating police officer and was therefore not a "duplicate” of the statements made in the undisclosed police report. The withheld document also omitted several details contained in the other reports prepared by Detective Daniel, one of the testifying officers. Consequently, the Appellate Division erred in concluding that the exception for "duplicative equivalents” is applicable.
Turning now to the Appellate Division’s alternative rationale, we hold that it too was erroneous. Since this Court’s decision in People v Consolazio (supra), we have adhered to the view that traditional harmless error analysis is inappropriate in appeals involving Rosario violations (People v Jones, supra; People v Novoa, 70 NY2d 490, 498-499; People v Ranghelle, supra; People v Perez, 65 NY2d 154). Even in our most recent consideration of the issue in People v Jackson (supra, at 649), where the Court spelled out a different standard for postconviction proceedings, care was taken to "emphasize that the per se error rule is still the law in this State when a Rosario claim is the subject of a direct appeal.” The decision in Jackson, which was premised on the unique policy considerations related to the finality of criminal judgments, thus was not intended to signal a more general retreat from the Court’s *371 ongoing "commitment” to the Consolazio-Jones per se rule of reversal.
The "commonsense” exception posited by the Appellate Division is nothing more than a substitute for the harmless error rule. That this is so is evident from that court’s consideration of the degree to which the undisclosed material bears on the accused’s factual guilt or innocence — a consideration unrelated to the values of procedural fairness that inform the Rosario rule (see, People v Jones, supra, at 550). The incompatibility of the Appellate Division’s approach with our Rosario case law is also demonstrated by the court’s assertion that "the information in the subject report in no way affected the credibility of the police officers who testified at trial.” (172 AD2d 790, 791, supra.) As we have stated over and over again, "a judge’s impartial determination as to what portions may be useful to the defense, is no substitute for the single-minded devotion of counsel for the accused” (People v Perez, supra, at 160; accord, People v Jones, supra, at 551-553; People v Novoa, supra, at 490).
Indeed, this Court has already explicitly rejected the suggestion that reversal should not be required where the withheld Rosario information was "of only 'de minimis’ or 'minimal’ value” (People v Jones, supra, at 552, n 4). As we stated in People v Jones (supra, at 552, n 4), judicial assumptions as to the impeachment value of the undisclosed material are "beside the point,” since "the conclusion that the information was of no value must necessarily be founded on sheer speculation as to what might have occurred * * *: i.e., the questions counsel might have asked * * *, how the witness might have answered, and how such differences in the testimony might have affected the decision of the jury.” It is thus apparent that while we have from time to time referred to the general notion of "commonsense limits” on the Rosario rule (see, People v Jackson, supra; People v Ranghelle, supra, at 63), the specific exception to the per se reversal rule that is proposed here is simply not consistent with the principles underlying our case law.
Having concluded that there is no principled basis for refusing to apply the Consolazio-Jones per se reversal rule, we must direct our attention to the proper remedy under the unique circumstances of this case. The withheld report would constitute Rosario material only if the "investigating officer” whose statements it contained was one of the police officers *372 who testified at defendant’s trial (see, CPL 240.45 [1] [a]). The report itself is ambiguous and leaves considerable room for uncertainty on that point. Although Detective Daniel, who was one of the testifying officers, had been the detective assigned to investigate and might well be the "investigating officer” referred to, he was not the only police officer involved in the field investigation and, thus, it cannot be assumed that the statements in the report were his. Further, because the withheld material was not discovered until the appeal to the Appellate Division was pending, there was no opportunity for the trial court to explore the facts surrounding the creation of the report. Thus, an additional inquiry is required.
While the proper procedural vehicle for such an inquiry involving documents discovered after judgment is ordinarily a hearing held pursuant to CPL article 440, resort to that vehicle is unnecessary in this case because of the parties’ stipulation that the previously undisclosed report would become part of the record on direct appeal. Inasmuch as the report thereby became part of the record on appeal, there is no procedural impediment to ordering an inquest before the trial court to clarify its contents as part of the proceedings on the direct appeal (see, People v Adger, 75 NY2d 723, 726).
Under these circumstances, we conclude that the proper remedy is to modify the order of the Appellate Division and remit to the trial court for a determination of whether the withheld report contains statements made by a witness who testified for the People at trial. If, after that inquiry, the court determines that the report contains a statement of a testifying witness that should have been turned over to the defense pursuant to CPL 240.45 (1) (a), a new trial should be ordered. On the other hand, if it is determined that defendant was not entitled to disclosure because the report did not, in fact, contain statements made by a witness for the People, the judgment should be amended to reflect that determination (see, People v Adger, supra).
Accordingly, the order of the Appellate Division should be modified by remitting to the Supreme Court for further proceedings in accordance with this opinion, and, as so modified, affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Hancock, Jr., and Bellacosa concur.
Order modified, etc.

 According to the People, this document was one of many similar reports that had been generated by the Police Department but had never been disclosed to the trial assistants assigned to prosecute the cases. The practice was apparently discovered by the District Attorney’s office in May of 1990. In defendant’s case, the prosecutor turned over the document to defense counsel in August 1990.