OPINION OF THE COURT
Titone, J.
A witness’s pretrial statements must generally be disclosed to the defense before opening argument (see, CPL 240.45), but the failure to make such timely disclosure will not lead to any sanctions if the undisclosed matter is the "duplicative equivalent” of material that has previously been disclosed. The question presented here is whether the latter principle may be applied when a document subject to Rosario disclosure has been destroyed and a testimonial reconstruction is required to establish its contents. Concluding that the fallibility of human memory makes the necessary flawless reconstruction all but impossible, we hold that a document that has been destroyed can never be deemed the "duplicative equivalent” of one that exists and remains available for inspection.
At about 10:00 p.m. on October 2, 1990, a narcotics enforcement officer, Robert Wasson, who was stationed on the roof of a nearby apartment building, observed a series of transactions that he interpreted as drug sales. According to the trial evidence, the officer watched through binoculars as three separate individuals approached the same individual and exchanged money for what appeared to be vials of cocaine. After each transaction, Wasson radioed his arrest team. One member of this team, an Officer Wynne, arrested one of the buyers at about 10:30 p.m., recovering two vials of crack cocaine. According to Wynne’s trial testimony, these vials were immediately placed in an envelope on which he wrote the arrestee’s name and the location and time of arrest. At approximately 11:25, Wynne received another radio message from Wasson. As a result, he arrested defendant, whom he intercepted about *568 two minutes later as he left a nearby liquor store. Wynne found no money on defendant’s person, but he did find one cocaine vial like the ones that had been recovered from the other arrestee. He sealed this vial in a separate envelope, once again writing down the arrestee’s name and the time and place of arrest.
Upon returning to the precinct, Wynne vouchered the vials. Although Wasson promptly identified defendant as the seller and the other arrestee, Peter Gerzbach, as the buyer, Wynne conceded that the voucher prepared for Peter Gerzbach initially indicated that he was the seller. Defendant was subsequently charged with third degree criminal sale of a controlled substance as well as third degree criminal possession.
The People timely disclosed the complaint report and the other documents that were prepared at the precinct. However, the envelopes in which Officer Wynne had placed the two arrestees’ cocaine vials were never turned over. During the trial, Wynne acknowledged that he had destroyed the envelopes after transferring the information they contained to his on-line booking sheet and complaint report.
At the close of evidence, defense counsel asked the court to give the jury an adverse-inference charge regarding the destruction of the arrest envelopes. The People opposed this request, noting that "[t]he officer has stated * * * that all the information on the envelopes [had been] transported to his reports.” The trial court denied the defense motion without further comment. The jury ultimately found defendant guilty of the charged crimes.
On his appeal from the judgment of conviction, defendant argued that the destruction of the envelopes constituted a Rosario violation. However, the Appellate Division rejected this argument, holding that "[t]he information contained on the destroyed security envelopes * * * w[as] the 'duplicative equivalent’ of that contained in the on-line booking sheet and complaint reports * * * turned over to the defendant prior to trial.” (205 AD2d 555, 556.) The Court also concluded that the information purportedly contained on the envelopes "was not relevant to the issue of whether the defendant was the individual who[m] the surveilling officer observed selling cocaine.” Contrary to the Appellate Division’s holding, we conclude that the destroyed envelopes cannot be considered the "duplicative equivalent” of the disclosed arrest material.
*569 In People v Consolazio (40 NY2d 446, 454), the Court determined that certain undisclosed worksheets were Rosario material but concluded that a sanction for the prosecution’s withholding of the worksheets was unnecessary because an examination of the document revealed that the statements they contained "were the same” as the statements made in the disclosed Grand Jury minutes, "the only difference being as to the particular form in which [the] statements were recorded.” This holding was subsequently characterized as a "commonsense” limitation on the scope of the People’s Rosario obligation (People v Jackson, 78 NY2d 638, 644).
Since Consolazio was decided, we have had occasion to explain what is meant by the duplicative-equivalent "exception” to the Rosario rule (see, People v Jones, 70 NY2d 547, 551, n 3). We stated in People Ranghelle (69 NY2d 56, 63), for example, that "[statements are not the 'duplicative equivalent’ of previously produced statements * * * just because they are 'harmonious’ or 'consistent’ with them.” A statement cannot be a "duplicative equivalent” if it contains even minor differences resulting from errors in transcription (id., at 61-62). Thus, in People v Young (79 NY2d 365, 370), we rejected a duplicative-equivalence claim because the undisclosed report mentioned details that the disclosed report did not. We also stated that the duplicative-equivalent exception cannot be invoked unless the two statements in question came from the same source (id., at 370).
In light of the need for a precise correlation between the undisclosed and disclosed material, this Court has previously assumed without discussion that a visual inspection of both documents is necessary (see, People v Adger, 75 NY2d 723, 725; People v Quinones, 73 NY2d 988, 989; People v Consolazio, supra, at 454). Indeed, in People v Wallace (76 NY2d 953, 955), where the undisclosed document was unavailable for inspection, we stressed that the document’s absence made it impossible to determine whether the material it contained was duplicated elsewhere.
We now make explicit what was implicit in our holding in Wallace, i.e., that a document that has been lost or destroyed and is therefore no longer available for judicial inspection cannot be deemed the "duplicative equivalent” of Rosario material that has previously been disclosed. Our holding is based on our practical recognition that a document’s unavailability poses an insurmountable barrier to making the detailed comparison and assessment that our decisions in Ranghelle and Young require.
*570 Contrary to the People’s contention, a police officer’s testimony regarding the contents of a lost or destroyed police document is not an acceptable substitute for the document itself, nor is it a sufficient basis from which the court could infer the requisite duplicative equivalence. Even where a document has purportedly been transcribed verbatim, inadvertent errors, omissions and deletions can occur, giving rise to precisely the kind of discrepancies that are most useful in cross-examination (see, e.g, People v Young, supra, at 369-370; People v Ranghelle, 69 NY2d 56, 63-64, supra; see also, People v Kass, 25 NY2d 123). Since the transcriber is likely to be unaware of these errors, that individual’s testimony cannot provide the necessary assurance that the two documents were alike in all respects.
Nor may the use of such testimony as a substitute for the destroyed document be justified under principles allowing the use of "secondary evidence” where the "best evidence”, i.e., the original document, has been lost or destroyed (see, e.g., Schozer v William Penn Life Ins. Co., 84 NY2d 639). The "best evidence” rule requires a showing that the loss or destruction of the document has been sufficiently explained and that the mishap was an innocent one (id., at 644). Such a foundational showing cannot ordinarily be made in this context, since a law enforcement officer’s deliberate destruction of a witness’s statement is inconsistent with the obligation implicitly imposed by the Rosario rule to preserve such statements for disclosure to the defense. Moreover, as previously noted, given the importance of even the smallest of details, the proponent cannot in these circumstances satisfy the "heavy burden” of establishing that the transcriber’s testimony from memory "is a reliable and accurate portrayal of the original” (id., at 645).
Inasmuch as the destroyed envelopes in this case cannot be considered the duplicative equivalent of the disclosed police reports, the exception to the Rosario rule of disclosure is unavailable. Accordingly, a Rosario violation plainly occurred, and it remains to be determined whether, as a matter of law, the trial court erred in declining to grant defense counsel’s request for an adverse-inference instruction as a sanction for this prosecutorial error.
We have previously held that "[wjhere the People fail to exercise due care in preserving Rosario material, and the defendant is prejudiced thereby, 'the [trial] court must impose an appropriate sanction’ ” (People v Wallace, 76 NY2d 953, *571 955, supra, quoting People v Martinez, 71 NY2d 937, 940). Since some showing of prejudice is essential, we have also stated that "the trial court must try to determine the content of the missing material” (People v Banch, 80 NY2d 610, 616). However, since a precise replication of a missing document cannot be achieved, the trial court’s inquiry must ordinarily be limited to ascertaining the document’s subject matter and approximate contents with a view toward determining its relevance (see, e.g., People v Haupt, 71 NY2d 929).
In this case, defendant has made a colorable claim of prejudice. Defendant’s position at trial was that he was the buyer, that the other arrested individual was the seller and that at some point the police had confused the two arrestees’ roles. This claim was supported by the facts that the crime of criminal sale had been inscribed on the voucher for the vials recovered from Gerzbach, that defendant had been unable to afford a $1.40 bottle of wine immediately before he was arrested, and that Gerzbach, in contrast, had had substantially more money on his person at the time of arrest. Given the defense’s theory, information contained on the destroyed envelopes, including the times and locations of the respective arrests, might have provided useful additional support for the defense position. For example, if the envelope containing two cocaine vials had been inscribed with defendant’s name rather than Gerzbach’s, it would have advanced the defense’s contention that he was the buyer whom Wasson had observed exchanging money for some "vials” of cocaine. Notably, only one of the two destroyed envelopes contained more than one vial.
We are not persuaded by the People’s contention that defendant’s claim of prejudice is too speculative. Since it was the conduct of the police that resulted in the loss of the envelopes and made it impossible to know whether the information they contained was consistent with the People’s position at trial (see, People v Wallace, supra, at 955), the People cannot now be heard to complain that the defendant’s showing of prejudice is not sufficiently definite and clear.*
Significantly, this is not a case in which the relevance of the *572 lost document was marginal (see, People v Haupt, 71 NY2d 929, supra). Moreover, unlike People v Haupt (supra, at 931), which is cited by the dissent, it is not a case in which defense counsel sought the "drastic remedy” of dismissal of the charges. Nor is it a case where the less drastic but nonetheless stringent sanction of witness preclusion was sought (see, People v Martinez, supra). In this case, the requested sanction — an adverse-inference instruction — was appropriate and proportionate to the harm that resulted from the destruction of the envelopes. Indeed, in People v Martinez (supra), where we found the possibility of prejudice "remote”, this Court held that an adverse-inference instruction was an appropriate sanction for the loss of certain police officer notes that may have once existed.
It may be true, as the dissenter opines, that no "bad faith” was involved in the Officer Wynne’s destruction of the envelopes. However, it is also true that the destruction of the envelopes was a deliberate act undertaken by a law enforcement officer who had a duty to preserve potential Rosario material. Thus, this case is a far cry from People v Haupt (supra), in which the material in question was accidentally destroyed in accordance with routine property-room procedures during the 16-year hiatus between the defendant’s indictment and his trial. It is also unlike People v Martinez (supra), in which the officer who ostensibly created the document in question was simply not available at the time of trial and an "intensive investigation” failed to reveal any of the officer’s notes.
Given the articulable showing of prejudice that the defendant made, the unavailability of the documents from which a less conjectural showing might have been made and, finally, the circumstances of the documents’ loss, the trial court’s refusal to impose the limited sanction counsel requested constituted an abuse of discretion as a matter of law (see, People v Wallace, supra).
Accordingly, the order of the Appellate Division should be reversed, and a new trial ordered.

 Similarly unpersuasive is the dissent’s detailed dissection of the trial record in an effort to rebut defendant’s claim of prejudice. The dissent’s assertions are precisely the kind of fact-based arguments that would have been made before the jury if the envelopes had been available for use by the defense. Unfortunately, the destruction of those envelopes made it impossible for the defense to make contrary arguments at trial or to establish the *572 kind of record that the dissent seems to demand. In light of that circumstance, we deemed the dissent’s marshalling of the trial facts an unhelpful method for determining prejudice.