Rafael FLORES, Petitioner–Appellant,

v.

Joseph DEMSKIE, Superintendent of Woodbourne Correctional Facility, Respondent–Appellee.

Docket No. 98–2558

United States Court of Appeals, Second Circuit.

Argued: April 14, 1999

Decided: June 15, 2000

Jessica S. Henry, Office of the Appellate
Defender, New York, N.Y. (Richard M.

Greenberg, of counsel), for Petitioner–Appellant.

John F. Carroll, Assistant District Attorney, Bronx, N.Y. (Robert T. Johnson, District Attorney, Bronx County, Joseph N. Ferdenzi, Assistant District Attorney, of counsel), for Respondent–Appellee.

Before: VAN GRAAFEILAND, JACOBS, and STRAUB, Circuit Judges.

Judge VAN GRAAFEILAND dissents in a separate opinion.

STRAUB, Circuit Judge:

Petitioner Rafael Flores, a New York State prisoner, appeals from a judgment entered in the United States District Court for the Southern District of New York (Michael B. Mukasey, *Judge* ), denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, Flores argues that he was denied his Sixth Amendment right to effective assistance of counsel because his trial counsel, who admitted after trial that he was unfamiliar with the well-established New York State rule that a prosecutor's failure to deliver a prior statement of a witness to be called at trial constitutes *per se* error requiring a new trial, *see People v. Ranghelle*, 69 N.Y.2d 56, 63, 503 N.E.2d 1011, 1016, 511 N.Y.S.2d 580, 585 (1986), waived a violation of this disclosure requirement that would have entitled the petitioner to a new trial, *see People v. Rosario*, 9 N.Y.2d 286, 173 N.E.2d 881, 213 N.Y.S.2d 448, *cert. denied*, 368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961). Specifically, according to Flores, the prosecutor failed to provide the defense with a police officer's memo book containing a statement of a witness until after Flores's trial concluded, at which time Flores's trial counsel, unaware of the automatic new trial rule, excused this error by informing the trial judge that he would not have acted differently had he received the memo book prior to trial.

The District Court held an evidentiary hearing, and, in an opinion and order, found that the memo book contained the statement of a witness. However, the District Court also concluded that the statement fell within an exception to the *Rosario* disclosure rule for statements that are the duplicative equivalent of statements already turned over to the defense, and therefore, Flores did not suffer prejudice within the meaning of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Flores v. Demskie*, 11 F.Supp.2d 299, 302, 314 (S.D.N.Y. 1998) (citing *People v. Consolazio*, 40 N.Y.2d 446, 454, 354 N.E.2d 801, 387 N.Y.S.2d 62, 66 (1976), *cert. denied*, 433 U.S. 914, 97 S.Ct. 2986, 53 L.Ed.2d 1100 (1977)). On appeal, Flores challenges this ruling and argues that the memo book contained *Rosario* material that should have been disclosed and that trial counsel's waiver of this claim for a new trial rendered his performance ineffective. For the reasons that follow, we agree with Flores that he was denied effective assistance of counsel, and therefore, we reverse the District Court and remand for the conditional granting of the writ.

## BACKGROUND

On November 9, 1990, Flores was convicted following a jury trial in New York State Supreme Court, Bronx County, of four counts of sodomy in the first degree, in violation of N.Y. Penal Law § 130.50, "arising out of his deviate sexual intercourse with a six-year-old boy who lived in [Flores's] apartment building." *People v. Flores*, 84 N.Y.2d 184, 186, 639 N.E.2d 19, 19, 615 N.Y.S.2d 662, 662 (1994). Flores's trial attorney became aware during jury selection, that the prosecution had failed to turn over the memo book containing notes taken by Officer Karen Pabon, who had interviewed the victim's mother. Because the victim's mother testified for the prosecution during the trial, pursuant to New York's *Rosario* rule, codified at N.Y.Crim. Proc. Law § 240.45(1)(a), the prosecutor was required to produce any written or recorded statement the witness made before the State's opening statement.

Should the prosecutor fail to do so, "where a defendant is deprived of *Rosario* material at trial, a new trial is required" in all but a limited set of circumstances. *People v. Banch*, 80 N.Y.2d 610, 615, 608 N.E.2d 1069, 1072, 593 N.Y.S.2d 491, 494 (1992).

Defense counsel informed the trial judge of the prosecutor's failure to produce the memo book at the end of the State's case-in-chief. The court called this mistake "absolutely inexcusable" and told the prosecutor "[y]ou know what the Court of Appeals has said with respect to these memo books." The court went on to complain that:

> Here we are at the end of the trial. Case has been pending for almost two years, and you stand there and tell me you have never given them the memo books, that's outrageous, I tell you the truth. . . . The Court of Appeals has made it clear that we have to give these memo books over to the defense and here we are, the last day, thinking of charging the jury in a case that clearly must be reversed if you don't turn over the memo books.

The judge decided not to charge the jury that day so that the prosecutor could find the memo book. However, the prosecutor was unable to do so. The trial court, recognizing that the memo book "would not be Rosario material, per se" unless it contained the statements of a witness, resolved to charge the jury, allowing defense counsel to "preserve his exceptions for the record with respect to that memo book." If the memo book became available, "if counsel feels that it's appropriate, he will make whatever motions he deems necessary on behalf of his client even to the extent of setting aside the verdict if need be."

After the jury returned its guilty verdict but before sentencing, the prosecution produced the memo book. Immediately prior to sentencing, before the judge had even begun to speak at the hearing, defense counsel informed the court that:

> I have read the memo books we've been referring to throughout the history of this case. I've reviewed them, there is absolutely nothing in the memo book that would have made any difference in terms of what I did or did[ ]not do, ask or did not ask and that's about it.

Counsel then made a motion to set aside the verdict as against the weight of the evidence, which was denied. On November 9, 1990, Flores was sentenced to four concurrent terms of five to fifteen years' imprisonment.

In July 1992, before his direct appeal to the Appellate Division, First Department, was decided, Flores returned to the Supreme Court, Bronx County, and moved to set aside his conviction pursuant to N.Y.Crim. Proc. Law § 440.10. Flores argued that he was entitled to a new trial because of the alleged *Rosario* violation and because he was denied effective assistance of counsel when his trial attorney waived this issue. In conjunction with the latter argument, Flores submitted an affirmation from his trial counsel, who admitted that he "was not aware that the failure to turn over the memo book, unless waived, was *per se* reversible error that would have required vacatur of Mr. Flores' conviction." Counsel also stated that he "believed that to prevail on a *Rosario* claim [he] would have to show prejudice," and that he failed to discuss with Flores any issues arising from the prosecution's failure to turn over the memo book.

The trial court denied the motion on December 4, 1992. Although the court "acknowledged that it had virtually invited a new trial motion during colloquy about the missing memo book while the trial was ongoing," it stated that it expected an immediate motion pursuant to N.Y.Crim. Proc. Law § 330.30 to set aside the verdict, and not a § 440.10(1) motion two years after the verdict. *Flores*, 11 F.Supp.2d at 304. The trial court concluded that Flores was procedurally barred from collaterally challenging his conviction because the memo book was part of the

trial record. *See* N.Y.Crim. Proc. Law § 440.10(2)(b) (requiring denial of a § 440.10(1) motion where the judgment is on appeal and "sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal"). In the alternative, the court denied Flores's ineffective assistance claim on the merits. The court also expressed its belief that its disposition of the § 440.10 motion would "be incorporated in defendant's direct appeal." On February 4, 1993, a Justice of the Appellate Division, First Department, denied Flores both leave to appeal the disposition of his § 440.10 motion and his request to consolidate that appeal with his direct appeal from his judgment of conviction. Not only did this end Flores's collateral attack on his conviction in state court, *see* N.Y.Crim. Proc. Law § 450.15(1), but it also meant that the record created on that motion would not be incorporated into his direct appeal.

After the decision on his § 440.10 motion, Flores perfected his direct appeal— which had been filed in a timely fashion on November 29, 1990—and again raised his claims of a *Rosario* violation and of ineffective assistance of counsel based on the failure to argue the *Rosario* issue. However, apparently as a result of the Appellate Division's order on Flores's appeal of the denial of his § 440.10 motion, neither the § 440.10 motion nor the record created were incorporated into the defendant's direct appeal, *see Flores,* 11 F.Supp.2d at 304, and trial counsel's affirmation was not presented to the appellate court. On June 17, 1993, the Appellate Division, First Department, affirmed Flores's conviction, rejecting his claim that he received ineffective assistance of counsel without addressing whether there was actually a *Rosario* violation. The First Department concluded that

> Implicit in the rule that a guilty verdict is to be vacated in the event of nondisclosure of *Rosario* material is a re-

quirement that the material might have been of some value to the defense, although the defendant is under no burden to show how. When counsel candidly denies having any use for the material when it is finally disclosed, it cannot be said that the defendant has any substantive right to be vindicated, and there is no basis in law or logic to order a new trial when there is no new issue to be tried. There is no basis in the record to controvert counsel's conclusions, and neither can counsel's representation be deemed incompetent merely because he did not pursue a concededly frivolous substantive claim as a basis for a new trial.

*People v. Flores,* 194 A.D.2d 439, 439, 599 N.Y.S.2d 255, 256 (1st Dep't 1993) (mem.) (citation omitted).

The New York Court of Appeals then granted leave to appeal and, on July 7, 1994, it affirmed the petitioner's conviction as well. Stating that the "sole dispositive issue" was whether the defendant was "deprived of effective assistance of counsel at the trial level," the Court of Appeals found that "[t]he totality of representation examined as of the time of representation ... supports [the] elementary conclusion" that the defendant "was not denied his constitutional right to effective assistance of counsel." *Flores,* 84 N.Y.2d at 187, 639 N.E.2d at 20, 615 N.Y.S.2d at 663. Based on trial counsel's statement at sentencing that the memo book would not have changed his actions, the Court concluded that "[d]efense counsel in this case got eventually to do precisely what *Rosario* directed"—determine whether the document had any value for cross-examination. *Id.,* 84 N.Y.2d at 187, 639 N.E.2d at 21, 615 N.Y.S.2d at 664. The Court also speculated that:

> For all this record reveals about defense counsel's ultimate evaluation of the disclosed item, ... defense counsel could have reasonably considered that his client's interest would best be served by no further delay in the resolution of the

case against the client. Any number of other professional strategic reasons or personal considerations affecting the defendant's fair trial interests could also have informed the attorney's professional evaluation and choice on how and why to proceed in the way chosen. The record does emphatically inform us, even as an appellate court reviewing the matter, of the defense lawyer's assessment of the quality and nature of the ultimately disclosed item—"absolutely" useless. A plausible strategy might even have included advocacy for amelioration of sentence or some other nuanced advantage in the adversarial exchanges and context, all matters and features not knowable by trial or appellate Judges removed from the full range of choices and context exercised singularly by the trial lawyer for the defendant.

*Id.*, 84 N.Y.2d at 188, 639 N.E.2d at 21, 615 N.Y.S.2d at 664. The Court of Appeals made no mention of trial counsel's ignorance of the *Rosario* rule, suggesting that it was not privy to counsel's post-trial affirmation. Two Judges dissented and indicated that they voted "to reverse and order a new trial, thereby affording defendant the benefit he would have had if his attorney had not inexplicably waived the per se *Rosario* remedy to which he was clearly entitled under this Court's precedents." *Id.*, 84 N.Y.2d at 189–90, 639 N.E.2d at 22, 615 N.Y.S.2d at 665 (Titone, J., dissenting).

■ Flores filed his petition for a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254 on April 19, 1996.[1] He argued that he was denied his Sixth Amendment right to effective assistance of counsel based on his trial counsel's failure to move to vacate his conviction as a result of the *Rosario* violation and because counsel volunteered that the alleged *Rosario* material was useless. The District Court

referred the petition to Magistrate Judge James C. Francis IV who recommended that it be denied. Applying the two-part test of *Strickland v. Washington*, 466 U.S. at 688, 694, 104 S.Ct. 2052, the Magistrate Judge first determined that defense counsel's actions were "objectively unreasonable" because he was not aware of the *per se* nature of the *Rosario* rule and therefore his statement waiving the issue was based on "a complete misunderstanding of prevailing law." Report and Recommendation ("Report") at 12. However, the Magistrate Judge concluded that the petitioner had failed to establish that he suffered any prejudice under *Strickland*. In so doing, the Magistrate Judge drew a distinction between the test for prejudice resulting from trial counsel's and appellate counsel's deficient performance. Thus, trial counsel's unreasonable conduct would result in prejudice where the attorney's performance "'renders the result of the trial unreliable or the proceeding fundamentally unfair.'" *Id.* at 13 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)). However, appellate counsel's conduct would result in prejudice only where "'there was a reasonable probability that [his] claim would have been successful before the [state's highest court].'" Report at 13 (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir.), *cert. denied*, 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994)). Applying the trial counsel standard, the Magistrate Judge concluded that Flores had failed to show that his counsel's conduct rendered the trial unreliable or unfair.

The District Court reached the same result, but on different grounds. Recognizing that Flores could not have been denied effective assistance of counsel if the memo book in question did not contain *Rosario* material, the District Court held

---

1. Thus, Flores filed his petition just prior to the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214. The modifications to 28 U.S.C.

§ 2254 promulgated by AEDPA are not retroactively applied to petitions filed prior to the effective date. *See Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

an evidentiary hearing to determine if the memo book contained a statement of the victim's mother. *See Flores*, 11 F.Supp.2d at 307, 314. Karen Pabon, a former police officer and the author of the memo book entries in question, testified as to her "vague recollection of the events . . . in 1989." *Id.* Specifically, she explained that she had responded to a report of a sexual assault and spoke to the victim's mother. *See id.* The school guidance counselor acted as a translator since the mother spoke only Spanish. *See id.* Lieutenant George Stamp testified for the respondent. Lieutenant Stamp had prepared an "unusual incident" report using information supplied by Officer Pabon, and, contrary to Pabon's testimony, this report stated that the "[o]fficers were informed by guidance counselor Hilda Be[y]ares" about the crime. The District Court considered the testimony and documentary evidence and concluded that Lieutenant Stamp—and the unusual incident report—were mistaken since Pabon testified that "she did not speak with the victim, and the guidance counsel[ ]or acted only as a translator; by a process of elimination, only the mother could have conveyed the italicized information." *Id.* at 309. Thus, the District Court found that the memo book contained two statements from the victim's mother: (1) Victim[2] "was sodomized by neighbor while he went to play [there] with perps children—victim notified mother"; and (2) "Perp Rafael flores [address] approx 32 M/H." *Id.* at 309.

▮ Although concluding that the memo book contained statements of the victim's mother, the District Court raised *sua sponte* the question of whether the statements in the memo book were merely the duplicative equivalent of those in a report filed by Officer Pabon that had been turned over to Flores's trial counsel. *See id.* (citing *Consolazio*, 40 N.Y.2d at 454, 354 N.E.2d at 801, 387 N.Y.S.2d at 66). If the witness's statements that were not provided to the defense are "nothing more than duplicative equivalents of statements previously turned over to the defense," then the State has no obligation to produce them and the *Rosario* automatic reversal rule does not apply. *Consolazio*, 40 N.Y.2d at 454, 354 N.E.2d at 806, 387 N.Y.S.2d at 66. In explaining this exception to *Rosario*, the District Court noted that " 'omissions often furnish important subjects for cross-examination[,]' . . . but only when the omissions at issue appear in statements by the witness at different times." *Flores*, 11 F.Supp.2d at 313 (quoting *People v. Young*, 79 N.Y.2d 365, 370, 591 N.E.2d 1163, 1166, 582 N.Y.S.2d 977, 980 (1992)).

After examining Officer Pabon's memo book and police report, the District Court concluded that the two contained statements that were the duplicative equivalent of each other. Since the records were simply different transcriptions of the same statement made by the victim's mother, the District Judge reasoned that unless there was a substantive difference between the statements they would have limited value on cross-examination. The fact that omissions existed could not by itself be a subject for cross, "the witness by hypothesis having spoken only once." *Id.* Here, the court identified two differences, but he did not consider them to be substantive. First, the memo book says that the "victim notified mother," while the report merely suggests that the mother reported the crime. *Id.* Second, whereas the memo book records that the victim "was sodomized by neighbor while he went to play [there] with perps children," the report states that the victim was "playing at neighbors apt." when the assault occurred. *Id.*

Accordingly, the District Court found that since the memo book was the duplicative equivalent of Officer Pabon's report, Flores would not have been entitled to a new trial under *Rosario*. Therefore, Flores suffered no prejudice from his

---

**2.** Like the District Court, we have omitted the name of the victim.

counsel's statement waiving the potential *Rosario* claim. *See id.* at 314. The District Court granted a certificate of appealability, and this appeal followed.

## DISCUSSION

On appeal, Flores asserts that the District Court erred in concluding that the statements contained in Officer Pabon's memo book fell within an exception to the *Rosario* disclosure requirement as the duplicative equivalent of those in Officer Pabon's report. Moreover, because the District Court found that, absent the "duplicative equivalent" exception, the statements in the memo book were otherwise statements of a witness that the prosecution was required to turn over, Flores contends that his counsel's performance was deficient for waiving this *Rosario* claim.

█ As the District Court did, we analyze Flores's claim of ineffective assistance of counsel under the well-established rubric of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on such a claim, the petitioner must establish that (1) his counsel's performance "fell below an objective standard of reasonableness," *id.* at 688, 104 S.Ct. 2052, and (2) "there is a 'reasonable probability' that, but for the deficiency, the outcome of the proceeding would have been different," *McKee v. United States,* 167 F.3d 103, 106 (2d Cir.1999) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Preliminarily, however, we analyze the question considered dispositive by the District Court— whether the memo book contained *Rosario* material that the prosecution was required to turn over to Flores prior to trial.

### I. *Applicability of* Rosario *Rule to Memo Book.*

#### A. *Statements of the Victim's Mother*

█ In *People v. Rosario,* 9 N.Y.2d 286, 173 N.E.2d 881, 213 N.Y.S.2d 448, *cert. denied,* 368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961), the New York Court of

Appeals held that " 'a right sense of justice' entitles a defendant to inspect the prior statements of a prosecution witness, prior to cross-examination, whether or not his statements vary from his testimony on the stand." *People v. Ranghelle,* 69 N.Y.2d 56, 62, 503 N.E.2d 1011, 1015, 511 N.Y.S.2d 580, 584 (1986) (quoting *Rosario,* 9 N.Y.2d at 289, 173 N.E.2d at 883, 213 N.Y.S.2d at 450). Later, "in order to assure the People's scrupulous adherence to their obligation to turn over *Rosario* material," the Court of Appeals "articulated a rule of per se reversal" so that "[t]he price for the People's failure to disclose prior statements of their own witnesses thus became automatic reversal of the conviction." *People v. Machado,* 90 N.Y.2d 187, 191, 681 N.E.2d 409, 411, 659 N.Y.S.2d 242, 244 (1997); *accord People v. Banch,* 80 N.Y.2d 610, 615, 608 N.E.2d 1069, 1072, 593 N.Y.S.2d 491, 494 (1992). The Court explained that applying a harmless error analysis "would necessarily require weighing the potential impeachment value of the withheld material," a question best left to the accused's counsel and not to a trial or an appellate court. *Banch,* 80 N.Y.2d at 615, 608 N.E.2d at 1072, 593 N.Y.S.2d at 494. *See* N.Y.Crim. Proc. Law § 240.45(1)(a) (codifying *Rosario* rule).

█ After holding an evidentiary hearing, the District Court concluded in this case that Officer Pabon's memo book contained the statement of the victim's mother, a witness who testified at trial. We review this factual determination for clear error. *See Polizzi v. United States,* 926 F.2d 1311, 1319 (2d Cir.1991). The State asserts that the District Court's conclusion was clearly erroneous because Officer Pabon spoke directly with only Hilda Beyares, the guidance counselor who accompanied the victim's mother to meet with the officers. Since Lieutenant Stamp testified that Beyares was the source of Officer Pabon's information, and he in fact wrote this in his "unusual incident" report as well, the State asserts that the memo

book contained the statement of Beyares and not the victim's mother.

However, we see no clear error in the District Court's conclusion. Officer Pabon testified that Beyares acted as an interpreter for the mother, and, although Officer Pabon did not speak Spanish and had no direct way of knowing whether Beyares's translation was accurate, the District Court could draw the reasonable inference from Officer Pabon's testimony that only the victim's mother knew the information the officer was requesting and therefore that Beyares was acting as a translator. Indeed, Officer Pabon stated that she learned the factual background to the crime, such as the description of the alleged perpetrator and the circumstances of the attack, from the victim's mother. The District Court's ruling that the memo book contained the mother's statement is further supported by the police report completed by Officer Pabon, in which she listed the "reporter" of the crime as the victim's mother, and framed the description of the crime as by the "reporter stat[ing] for victim." Finally, although Lieutenant Stamp's testimony and the "unusual incident" report were to the contrary, the District Court could fairly conclude that Lieutenant Stamp was mistaken given the substantial evidence in support of the petitioner's position. In particular, we note that it was Officer Pabon and not Lieutenant Stamp who made the entries in the memo book and who spoke with the victim's mother, and Lieutenant Stamp's testimony at the hearing was based entirely on his review of his report.

### B. *The "Duplicative Equivalent" Exception*

While the District Court concluded that the memo book contained the statements of a witness, the court also found that the memo book fell within an exception to the mandatory disclosure rule because the statements were the duplicative equivalent of other statements contained in the police report completed by Officer Pa-

bon. The District Court based this conclusion on its reading of New York case law explaining this exception, as well as on its belief that the omissions from the police report contained in the memo book would not have been useful on cross-examination. *See Flores,* 11 F.Supp.2d at 312–14.

Although there is a "strong presumption of the discoverability of prior statements of prosecution witnesses under the *Rosario* rule," the "duplicative equivalent" rule is one of the "commonsense limits" to such required disclosure. *Ranghelle,* 69 N.Y.2d at 63, 503 N.E.2d at 1015, 511 N.Y.S.2d at 584. "Statements are not the 'duplicative equivalent' of previously produced statements, however, just because they are 'harmonious' or 'consistent' with them." *Id.; see also People v. Joseph,* 86 N.Y.2d 565, 569, 658 N.E.2d 996, 998, 635 N.Y.S.2d 123, 125 (1995). Thus, according to the New York Court of Appeals, "[a] statement cannot be a 'duplicative equivalent' if it contains *even minor differences* resulting from errors in transcription." *Joseph,* 86 N.Y.2d at 569, 658 N.E.2d at 998, 635 N.Y.S.2d at 125 (emphasis added).

In reaching its conclusion that the witness's statements in the memo book were the duplicative equivalent of those in the police report, the District Court focused on *People v. Consolazio,* 40 N.Y.2d 446, 454, 354 N.E.2d 801, 806, 387 N.Y.S.2d 62, 66 (1976), *cert. denied,* 433 U.S. 914, 97 S.Ct. 2986, 53 L.Ed.2d 1100 (1977), the case in which the Court of Appeals first set forth the exception to *Rosario* for duplicative equivalents. In *Consolazio,* certain witness statements, in the form of questionnaires completed by an interviewing officer prior to trial, were not turned over to the defense. *See id.,* 40 N.Y.2d at 452, 354 N.E.2d at 804, 387 N.Y.S.2d at 64–65. However, the prosecution had produced the actual grand jury testimony of the witnesses, and the "statements contained in the worksheets were the same as the statements made by such witnesses before the Grand Jury." *Id.,* 40 N.Y.2d at 454, 354

N.E.2d at 806, 387 N.Y.S.2d at 66. Thus, the "worksheets in this instance were nothing more than duplicative equivalents of statements previously turned over to the defense-the only difference being as to the particular form in which such statements were recorded." *Id.* Nevertheless, as the District Court pointed out in its opinion, it is highly unlikely that the worksheets contained exactly the same information as the disclosed grand jury testimony of the witnesses. *See Flores,* 11 F.Supp.2d at 312.

After *Consolazio,* however, the Court of Appeals narrowed the scope of the "duplicative equivalent" exception considerably. In *Ranghelle,* the Court of Appeals found that certain memo books not turned over to the defense were not the duplicative equivalent of incident reports that merely transcribed the information in those memo books. *See* 69 N.Y.2d at 65, 503 N.E.2d at 1017, 511 N.Y.S.2d at 586. The prosecution had used the undisclosed memo books to refute the defendant's theory that the victim's testimony with respect to the identity of a robber was inconsistent with the incident report. *See id.,* 69 N.Y.2d at 61–62, 503 N.E.2d at 1014–15, 511 N.Y.S.2d at 583–84. The Court of Appeals concluded that "the People cannot claim the descriptions in the memo books were the 'duplicative equivalents' of the descriptions in the incident reports" because "the descriptions contained in the two materials varied," even though "[t]he inconsistencies were minor." *Id.,* 69 N.Y.2d at 65, 503 N.E.2d at 1017, 511 N.Y.S.2d at 586; *see also Young,* 79 N.Y.2d at 370, 591 N.E.2d at 1166, 582 N.Y.S.2d at 980 (concluding that an undisclosed unusual incident report containing a reference to "rope-burn marks" not contained in another report could not be a duplicative equivalent); *cf. Joseph,* 86 N.Y.2d at 569, 658 N.E.2d at 998, 635 N.Y.S.2d at 125 (noting "the need for a precise correlation between the undisclosed and disclosed material" to consider the possibility that the documents may be duplicative equivalents, and therefore, holding that "a document that has been lost or destroyed and is therefore no longer available for judicial inspection cannot be deemed the 'duplicative equivalent' of *Rosario* material that has previously been disclosed").

In this case, given the New York Court of Appeals' narrow approach to the "duplicative equivalent" exception to *Rosario,* we disagree with the District Court's conclusion that the statements contained in the memo book were the duplicative equivalent of those in the police report. Plainly, there are differences in the statements recorded in the two documents. The District Court identified two: (1) the memo book states that the "victim notified mother," while the police report merely states that the victim's mother reported the incident; and (2) the memo book reports that the victim "was sodomized by neighbor while he went to play [there] with perps children," while the report says that the crime took place when the victim was "playing at neighbors apt." and "while going to a neighbor's house to play." *Flores,* 11 F.Supp.2d at 313. While these inconsistencies may be "minor," *Ranghelle,* 69 N.Y.2d at 65, 503 N.E.2d at 1017, 511 N.Y.S.2d at 586, they nevertheless exist, and "[t]wo documents cannot be 'duplicative equivalents' if there are variations or inconsistencies between them," *Young,* 79 N.Y.2d at 370, 591 N.E.2d at 1166, 582 N.Y.S.2d at 980.

Moreover, we also do not agree with the District Court's conclusion that the omissions in the police report contained in the memo book furnish no basis for cross-examination. *See Flores,* 11 F.Supp.2d at 313–14. At the outset, we note that while the utility of such omissions or differences for cross-examination purposes may be the underlying purpose for the *Rosario* rule and for the "duplicative equivalent" exception to that rule, *see Young,* 79 N.Y.2d at 370, 591 N.E.2d at 1166, 582 N.Y.S.2d at 980, the Court of Appeals has eschewed a harmless error analysis in favor of limited exceptions to

the general rule. Thus, ordinarily *Rosario* is a *per se* rule requiring reversal and a new trial where the prosecution fails to deliver a witness's statements to the defense, regardless of the actual value to the defense of the material. *See Ranghelle*, 69 N.Y.2d at 63, 503 N.E.2d at 1016, 511 N.Y.S.2d at 585. Similarly, while the "duplicative equivalent" exception applies to situations where there are no "variations or inconsistencies" between two documents containing statements of a witness, *Young*, 79 N.Y.2d at 370, 591 N.E.2d at 1166, 582 N.Y.S.2d at 980, we have no basis under New York law to inquire into the utility of the withheld document for cross-examination purposes.

In any event, even if the utility of the material were relevant to our analysis, we believe the District Court construed the value of the additional statements of a witness for cross-examination purposes too narrowly. The District Court focused on the fact that because the memo book and the police report contained the same statement of the victim's mother recorded in two different ways, there could be no impeachment value to the memo book. *Flores*, 11 F.Supp.2d at 313–14. However, the additional information in the memo book contained in the mother's statement serves the purpose of providing the defense attorney with a more complete picture of the facts for cross-examination purposes. *Cf. Ranghelle*, 69 N.Y.2d at 64, 503 N.E.2d at 1016, 511 N.Y.S.2d at 585 (noting that although a description contained in a complaint report was consistent with a witness's testimony, "it lacked essential details to which she later testified at trial, omissions which might have constituted important material for cross-examination"). Here, we can think of several possible uses for the statements pointed out by the District Judge. First, the fact that the victim's mother told Officer Pabon that the victim went to "play ... with perps children" makes clear that other persons (Flores's children) were on the premises, and that there was a reason for the victim's presence other than play or games

arranged by Flores for the two of them alone. Second, the memo book states that the "victim notified mother," while there is no such statement on the police report. This difference might well have served defense counsel in his attempt to question the motivation of the victim's mother, whom counsel tried to show did not like Flores even prior to the assault. *See, e.g.,* Trial Transcript at 119.

Accordingly, we conclude that the memo book contains the statements of the victim's mother and that these statements constitute *Rosario* material because they are not the duplicative equivalent of other statements turned over to the defense.

## II. *Ineffective Assistance of Counsel*

### A. *Counsel's Performance*

We turn next to the question of whether defense counsel's waiver of this *Rosario* claim constitutes ineffective assistance of counsel. Under the *Strickland* analysis, we consider first whether counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. 2052, *quoted in McKee v. United States*, 167 F.3d 103, 106 (2d Cir.1999). We examine an attorney's performance "as of the time of counsel's conduct," *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052, and we "may not use hindsight to second-guess his strategy choices," *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994).

This case is similar to *Mayo v. Henderson*, where the petitioner alleged that his appellate counsel had waived a "particularly strong" *Rosario* claim based on the prosecution's failure to turn over memo books that had resulted in the vaca-

tur of his co-defendant's conviction by the New York Court of Appeals in *Ranghelle,* 69 N.Y.2d at 63, 503 N.E.2d at 1016, 511 N.Y.S.2d at 585. *Mayo,* 13 F.3d at 530–31, 534. In that case, we concluded "that counsel's failure to raise the *Rosario* claim on [direct] appeal fell so far below the accepted level of competence as to deny Mayo his constitutional right to counsel." *Id.* at 536. Here, trial counsel waived a potential *Rosario* claim that would have entitled the petitioner to a new trial had it been raised before the trial court. Indeed, denial of the motion would have constituted *per se* reversible error on direct appeal. The only basis for this waiver was counsel's misunderstanding of *Rosario* and the failure to realize that harmless error did not apply. Indeed, the trial court even warned the prosecutor that the failure to turn over the memo books could result in "setting aside the verdict if need be." Despite this suggestion, counsel still waived the claim. Under the circumstances, trial counsel's performance was objectively unreasonable.

### B. *Prejudice*

▮▮▮▮▮ Under the second prong of the *Strickland* test, Flores must show that his counsel's deficient conduct prejudiced his defense. Prejudice is established if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052, *quoted in Bunkley v. Meachum,* 68 F.3d 1518, 1521 (2d Cir.1995).

The respondent argues, as it did below, that in light of the Supreme Court's decision in *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), we should not apply an outcome determination test but should instead focus more broadly on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.* at 372, 113 S.Ct. 838. Like the District Court, *see Flores,* 11 F.Supp.2d at 305–06, we reject this argument. *Fretwell* involved a claim of ineffective assistance of trial counsel based on the lawyer's failure to raise at the petitioner's state court sentencing an objection supported by then-existing federal law in the Eighth Circuit. *See id.* at 367, 113 S.Ct. 838. However, by the time the § 2254 petition was considered in federal court, the Eighth Circuit had overruled the precedent upon which the petitioner relied. *See id.* at 368, 113 S.Ct. 838. The Supreme Court explained that "the 'prejudice' component of the *Strickland* test . . . focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair," *id.* at 372, 113 S.Ct. 838, and therefore, the petitioner did not suffer prejudice because he had no right "to have the state court make an error in his favor," *id.* at 371, 113 S.Ct. 838 (internal quotation marks omitted).

However, as Justice O'Connor explained in her concurring opinion in *Fretwell,* the majority's holding was "narrow" and merely "identifies another factor that ought not inform the prejudice inquiry"—specifically, the possibility that a state court may make an error in the petitioner's favor. *Id.* at 374, 113 S.Ct. 838 (O'Connor, J., concurring). Thus, in all but a few cases, the basic *Strickland* prejudice inquiry applies and "[t]he determinative question—whether there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'—remains unchanged." *Id.* at 373, 113 S.Ct. 838 (O'Connor, J., concurring) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052) (citation omitted).

Since *Fretwell,* we have continued to find that a petitioner suffers prejudice where there exists a "reasonable probability" that the result "would have been different," *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Thus, in *Bunkley,* we explained that "where the underlying claim involves only state law, looking to the probable outcome

of the direct appeal in state court will be adequate under federal constitutional law doctrine to preserve confidence in the outcome and protect the defendant from prejudice." 68 F.3d at 1522–23. In other cases following *Fretwell* that do not involve the possibility that a state court would err in the petitioner's favor, we have looked solely to the language of *Strickland* and its explanation that prejudice results if there is a reasonable probability of a different outcome. *See, e.g., McKee*, 167 F.3d at 106–08; *Mayo*, 13 F.3d at 534–36; *cf. Grady v. Artuz*, 931 F.Supp. 1048, 1062 (S.D.N.Y.1996).

Accordingly, to determine whether Flores suffered prejudice, we look to whether there was a reasonable probability that the outcome would have been different. Here, Flores's trial counsel waived a strong *Rosario* claim without reason, without consulting Flores, and despite the trial judge's warning to the prosecution that it risked an order setting aside the verdict for failure to turn the memo book over to the defense. There is at least a reasonable probability under these circumstances that had that *Rosario* claim been pressed, Flores would have been granted a new trial by the trial court or on appeal. *See Mayo*, 13 F.3d at 536 (concluding that the petitioner suffered prejudice when appellate counsel waived a *Rosario* violation because there was a reasonable probability had it been raised on appeal that the petitioner would have received a new trial). Thus, Flores has shown the required prejudice.

## CONCLUSION

For the foregoing reasons, we conclude that the performance of Flores's trial counsel fell below an objective standard of reasonableness and that Flores was prejudiced as a result. Accordingly, we reverse the decision of the District Court and remand for the entry of judgment conditionally granting the writ and ordering Flores's release unless the State provides him a new trial within such reasonable period as the District Court shall set.

VAN GRAAFEILAND, *Senior Circuit Judge*, dissenting:

On this appeal, my colleagues suggest that I join them in holding that Rafael Flores has been incarcerated wrongfully for the past ten years and that the responsibility for this great wrong rests on the shoulders of his former attorney, Robert Katz. In short, the issue, as my colleagues frame it, is not whether Flores sodomized Miguel S.; the evidence is clear that he did. In effect, therefore, we are asked to pass judgment on the lawyer, Robert Katz, not the defendant, *i.e.*, "to grade counsel's performance," a task we are not authorized to perform in this habeas corpus proceeding. *See Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("The object of an ineffectiveness claim is not to grade counsel's performance."). As the competent and widely respected former district judge, Edward Weinfeld, put it in *United States ex rel. Butler v. Schubin:*

> *Rosario* is grounded in the State's common law, and if petitioner was wrongly denied tapes he was entitled to receive under that doctrine, no violation of federal constitutional rights is presented. Thus, assuming the State courts were in fact in error in interpreting the scope of the *Rosario* rule, it was one of state law that is not subject to a review under a petition for a federal writ of habeas corpus charging infringement of federal constitutional rights.

376 F.Supp. 1241, 1247 (S.D.N.Y.1974), *aff'd*, 508 F.2d 837 (2d Cir.1975) (footnotes omitted).

It is evident from the cases hereafter cited that the doctrine, as thus set forth, is concurred in by a long line of consistent federal authority. *See Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law" (citations and internal quotations omitted));

*Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution"); *Rose v. Hodges,* 423 U.S. 19, 21, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975) (necessary predicate for granting of federal habeas relief is determination that custody violates the Constitution, laws, or treaties of the United States); *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir. 1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1196, 145 L.Ed.2d 1100 (2000) ("[F]ederal habeas corpus relief does not lie for errors of state law." (quoting *Estelle,* 502 U.S. at 67, 112 S.Ct. 475)); *Headley v. Tilghman,* 53 F.3d 472, 474 (2d Cir.1995) ("A state prisoner is entitled to habeas relief only if he is being held in custody in violation of a federal right." (citations omitted)); *Manning v. Warden,* 786 F.2d 710, 712 (5th Cir.1986) ("Whether the state followed its own procedure is not the concern of a federal habeas court."); *Stephens v. Costello,* 55 F.Supp.2d 163, 167 (W.D.N.Y.1999) ("[F]ailure to turn over *Rosario* material is not a basis for habeas relief as the *Rosario* rule is purely one of state law." (quoting *Green v. Artuz,* 990 F.Supp. 267, 274 (S.D.N.Y.1998))); *Morrison v. McClellan,* 903 F.Supp. 428, 429 (E.D.N.Y.1995) ("Any error under *Rosario* at trial would be a violation of state law, and, thus, not subject to review under a petition for a writ of habeas corpus."); *Camara v. Scully,* 624 F.Supp. 106, 108 (S.D.N.Y.1985) ("A federal court on a petition for writ of habeas corpus may interfere in state criminal proceedings only to correct errors of constitutional dimension." (citations omitted)).

Flores does not strengthen his *Rosario* argument by clothing it in the garb of ineffective assistance of counsel. A violation of *Rosario* does not constitute per se ineffective assistance of counsel. *Boyd v. Hawk,* 965 F.Supp. 443, 453 (S.D.N.Y. 1997); *Colson v. Mitchell,* 798 F.Supp. 966, 973 (E.D.N.Y.1992); *People v. Nuness,* 159 A.D.2d 970, 970, 555 N.Y.S.2d 633 (N.Y.App.Div.1990). The standard for deciding whether habeas relief must be granted is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)) (internal quotations omitted). My colleagues distort this principle by arguing that a state appellate court might make a *Rosario* grant of a new trial despite the absence of a showing that the jury was improperly influenced in any manner. I believe there must be a showing of actual prejudice before a federal court can act. *Cousart v. Hammock,* 745 F.2d 776, 778 (2d Cir.1984).

I write this dissent because I want Mr. Katz to know that one judge believes he is being unfairly stigmatized by an opinion issued in excess of our authority.