[887 NYS2d 469]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v JOHN BOR-
TOLIS, Defendant.

Criminal Court of the City of New York, Queens County, September 16, 2009

852

**APPEARANCES OF COUNSEL**

*William McDonald* for defendant. *Richard A. Brown, District Attorney* (*Melissa Beach* of counsel), for plaintiff.

**OPINION OF THE COURT**

GENE R. LOPEZ, J.

The defendant is charged with two counts of driving while intoxicated (Vehicle and Traffic Law § 1192 [2], [3]). On March 23, 2009, this court started a *Huntley* hearing to determine whether the prosecution may use on its case-in-chief two statements made by the defendant to Police Officer Joseph Morabito: namely, that the defendant had been drinking and he had been driving. At the hearing, Morabito testified that he typed his recitation of facts surrounding the defendant's arrest onto a template of a criminal court complaint and then electronically submitted that draft to the prosecutor's office. He later received by fax from the prosecutor's office a final version of a criminal court complaint and, upon reading it, signed and returned it to the prosecutor's office. Morabito said his draft, which he did not save and print out, was not retrievable once transmitted to the prosecutor's office and is now unavailable. Following Morabito's direct and cross-examination, the People rested.[1]

Alleging a *Rosario* violation by which he suffered prejudice, the defendant submitted a motion to preclude Morabito's testimony. I heard argument from each party and have also considered the People's papers in opposition, including an at-

---

1. The defendant reserved his right to present testimony at the hearing.

tachment of a template of a criminal court complaint,[2] and an affirmation of Assistant District Attorney (ADA) George Farrugia. For the reasons stated below I find Morabito's draft of a criminal court complaint to be *Rosario* material; I find further that notwithstanding the loss by the People of Morabito's draft criminal court complaint no prejudice has been shown to the defendant and decline to impose any sanction against the prosecution.

## Factual Background

Morabito, while assisting his partner who was issuing a traffic summons to another motorist who had been stopped moments earlier, was standing mid-block on 31st Street north of its intersection with Ditmars Boulevard in the Astoria section of Queens on November 7, 2008 at about 5:30 A.M. The defendant pulled his 2008 Ford Expedition over to the side of 31st Street, got out of the car and walked toward Morabito. A moment later another person alighted from the front passenger side of the Ford Expedition.[3] Morabito described the defendant as loud, raising his hands as if to gain Morabito's attention and trying to engage Morabito in conversation to let Morabito know that the people his partner had stopped were his friends. During this discussion Morabito told the defendant that he smelled of alcohol. Morabito related that the defendant denied driving the car and asserted that his friend was driving.[4] Morabito explained that while he saw another person get out of the passenger side of the defendant's car, it was the defendant he saw drive the car, park and get out of the car and approach him.[5] The defendant responded, "Well, I parked the car."[6]

Morabito conceded that prior to the hearing he did not initially recall the defendant's admission that he was driving the car; after viewing a copy of the defendant's driver's license that contained his photograph and recalling the "odd" way the defendant's arrest came about, he remembered the defendant's admission that he was driving the vehicle.[7] When asked if the defendant said anything else, Morabito said, "I honestly, I don't

---

**2.** The template was missing from the People's papers submitted on June 12, 2009; it was subsequently received on June 25, 2009.

**3.** Hearing transcript at 24.

**4.** Hearing transcript at 10.

**5.** Hearing transcript at 10, 24.

**6.** Hearing transcript at 11.

**7.** Hearing transcript at 54-57.

know. I can't remember exactly what he said to me," but again, after refreshing his recollection by reviewing the criminal court information, recalled the defendant stating "he was out drinking earlier in the evening, and that he couldn't possibly still be drunk. He had approximately five drinks, five beers earlier that night."[8] At that point Morabito directed the defendant to stand by his car because Morabito's partner had not yet completed issuing a traffic summons to the driver of the first car. Thereafter, Morabito and his partner returned to the defendant; Morabito again noticed on defendant "a strong odor of alcohol." Morabito then told the defendant he "was going to place him under arrest" and then handcuffed him.[9]

Morabito acknowledged he did not record the defendant's statements in any of the paperwork related to this arrest—the intoxicated drivers examination report, the arrest report or his memo book—except for the criminal court information he used to refresh his recollection regarding the defendant's consumption of alcohol.[10]

Morabito stated that he created a draft of the criminal court complaint while he was at the 114th Precinct. He explained there is an expedited arrest process with the Police Department and the Queens District Attorney's Office (hereinafter QDA) that utilizes software known as ICAPS.[11] By using this software, Morabito typed onto a template of a criminal court complaint the facts of what happened and then transmitted this draft by computer to members of the QDA's complaint room. Morabito explained that the ICAPS software does not permit him to print a copy of the criminal court complaint that he transmitted to the QDA. Morabito explained further: after his draft was transmitted to the QDA, he spoke to a person assigned to the defendant's case. Morabito reviewed the facts and charges set forth in the draft with that person. Following this review Morabito received from the QDA a faxed (hereinafter final) version of the criminal court complaint that he initially transmitted to the QDA. He reviewed and signed the final version of the criminal

---

8. Hearing transcript at 15.
9. Hearing transcript at 13.
10. Hearing transcript at 33, 34.
11. Hearing transcript at 35, 36; Farrugia affirmation at 1, 2; the acronym ICAPS was not disclosed by either party.

court complaint.[12] Morabito said that while he did not have his draft of the criminal court complaint to compare with the final criminal court complaint—court exhibit 1—he did not believe any of the facts that he wrote in his draft had changed from the facts set forth in court exhibit 1[13] although he allowed for the possibility that the document could have been modified, or amended by the prosecutor who drew up court exhibit 1—the final version of the criminal court complaint.[14]

### Defendant's Position

The defendant urges this court to regard Morabito's draft of the criminal court complaint as *Rosario* material because the draft contains written statements made by Morabito, the People's witness, regarding the subject matter of his testimony at the hearing. The People concede Morabito's draft criminal court complaint is unavailable and cannot be produced to the defendant. The defendant requests a sanction of preclusion of Morabito's testimony because of the prejudice suffered by the defendant and the People's "willful and intentional obstructionism" in failing to take measures to preserve *Rosario* material.[15]

The critical and only issue in this case, according to the defendant, was whether he was operating the 2008 Ford Expedition as maintained by Morabito. Ancillary to this issue is Morabito's credibility, particularly as it relates to his assertion that defendant made several damaging admissions. In this regard, Morabito conceded he was uncertain initially whether the defendant admitted to driving. The defendant maintains that his admission is not included in any police reports made by Morabito and claims "there is a very good chance it [the defendant's admission that he was driving] is absent from the narrative" in Morabito's draft criminal court complaint.[16] The defendant argues the intentional loss of Morabito's draft criminal court complaint deprives him of valuable impeachment material that would further impair Morabito as a credible witness and expose a fundamental weakness in the People's case and justifies the sanction of preclusion.

---

12. The criminal court complaint referred to by Morabito was deemed court exhibit 1.

13. Hearing transcript at 46, 52.

14. Hearing transcript at 51, 53.

15. McDonald affirmation at 4, 5, 6, 8.

16. McDonald affirmation at 5.

## People's Position

The People concede that Morabito's draft criminal court complaint has not been saved and is unavailable, but advance several reasons that Morabito's draft does not constitute *Rosario* material. Firstly, the People argue Morabito's draft was a "work-in-progress," prepared with the interactive assistance of a paralegal or ADA who had "the duty to create a legally sufficient and appropriate document with which to arraign the defendant."[17] The People argue that until this process was completed by Morabito's adoption of the final version of the criminal court complaint, any prior draft of the criminal court complaint was entitled to the confidentiality afforded under the attorney work product doctrine. Secondly, and more fundamentally, the People argue the use of a spell check or syntax function, a backspace or delete key to correct mistakes does not create a new recorded or written statement that would render the original version of the criminal court complaint *Rosario* material notwithstanding that revisions or additions may have been made to Morabito's draft by "correcting misspellings, or spelling out an abbreviation or substituting a legal term for non-legal language."[18]

The People contend that even if Morabito's draft is *Rosario* material, its destruction and loss was occasioned by a routine and necessary office practice designed to avoid overloading their computer system and, under these circumstances, the defendant cannot demonstrate the kind of prejudice that warrants preclusion of Morabito's testimony. The People, in this regard, point to Morabito's testimony that everything he typed in his draft complaint was contained in the final version of the criminal court complaint; it is mere speculation Morabito failed to include in his draft defendant's admission that he was driving.

## Discussion

In *People v Ranghelle* (69 NY2d 56, 62 [1986]) the Court of Appeals stated that " 'a right sense of justice' entitles a defendant to inspect the prior statements of a prosecution witness, prior to cross-examination, whether or not [the witness'] statements vary from his [or her] testimony on the stand" (quoting *People v Rosario*, 9 NY2d 286, 289 [1961]). Following the Court of Appeals decision in *People v Rosario*, the Legislature codified this prosecutorial obligation in CPL 240.44.

---

17. People's response at 3.
18. People's response at 4.

## A. Work-in-Progress Exemption

In this case it is undisputed that Morabito typed his interpretation of the facts leading to the defendant's arrest onto an ICAPS template of a criminal court complaint maintained by the QDA computer system, forwarded his draft to the prosecutor and then engaged a member of the QDA in preparing the final version of the criminal court complaint. It is further undisputed that Morabito's draft complaint is now unavailable. The People cannot and do not represent that the final version of the complaint is a verbatim, identical copy of Morabito's draft, but maintain any changes to it were minor and nonsubstantive.

The holding in *People v Munroe* (307 AD2d 588 [3d Dept 2003], *lv denied* 100 NY2d 644 [2003]) is instructive. In *Munroe*, during a *Huntley* hearing, an investigator testified that after the defendant was advised of his *Miranda* rights, he typed the defendant's statement into a computer. The investigator testified that he made corrections as necessary by using the backspace key on the computer and that he did not take notes while the defendant made his statement. On appeal, the defendant argued that the People violated their *Rosario* obligation by not saving drafts of the nonfinal versions of defendant's statement made to this investigator. The appellate court acknowledged that the investigator's notes and defendant's statement were *Rosario* material. The People had turned over to the defendant the final saved version of his statement made to the investigator. The drafts of the defendant's statement were not saved and the investigator testified that he corrected those drafts. The parties conceded that the earlier drafts of the defendant's statement were lost or destroyed *Rosario* material. The defendant argued that the trial court erred in admitting the final version of his statement into evidence.

In its analysis, the appellate court assumed but did not decide that the unsaved nonfinal versions of the defendant's statement were lost or destroyed *Rosario* material and found that the record did not establish that the investigator acted in bad faith in not saving the drafts of defendant's statement or that he realized the edits of defendant's statement represented destruction of evidence.

 Unlike *Munroe*, in this case, the People do not concede that Morabito's draft complaint is *Rosario* material. The People contend that the question of whether a document constitutes *Rosario* material depends on the intention of the author of the document as to whether the document was meant to be a final

version, e.g., drafts characterized as works-in-progress. Whether a statement or document is *Rosario* material turns not on whether the document is in draft form but on whether the statement is that of a witness, recorded and relates to the subject of the witness' testimony on direct examination. (*See People v Adger*, 75 NY2d 723 [1989].)[19] Further, in *People v Kelly* (88 NY2d 248 [1996]), the Court of Appeals delineated other factors in considering whether the document constitutes *Rosario* material. They are: whether the items actually are in or subject to the possession or control of a prosecutor's office; whether the potential cross-examination materials are in the actual possession of what is primarily a law enforcement agency; whether a compelling reason exists to keep the items confidential; and whether the material not in the actual possession of the prosecutor or agency whose records may be deemed in the prosecutor's control is in any event equally accessible to the defendant. (*Id.* at 252.) None of these factors supports the People's position that they are entitled to a work-in-progress exemption from disclosure under *Rosario*. In this regard, the People's reliance on *People v Virola* (300 AD2d 822 [3d Dept 2002], *lv denied* 99 NY2d 633 [2003]) and *People v Moolenaar* (207 AD2d 711 [1st Dept 1994], *lv denied* 84 NY2d 1013 [1994]) is misplaced. In *Virola*, the reviewing court, relying on *People v Consolazio* (40 NY2d 446 [1976]), found the questioned document to be a summary of other documents previously disclosed to the defendant, had the benefit of reviewing the nondisclosed documents in a postverdict proceeding and found the nondisclosed document fell within an exception to the mandatory disclosure rule because it was the duplicative equivalent of other documents provided to the defense. In *Moolenaar*, the reviewing court, relying on *People v Woodside* (204 AD2d 168 [1st Dept 1994], *lv denied* 84 NY2d 873 [1994]), concluded the trial court made a sufficient inquiry to determine that the nondisclosed material did not contain witness statements not previously disclosed to the defense. Neither of these cases provides a sufficient basis to extend to the prosecution a work-in-progress exemption from disclosure. Indeed, the People cite no case law that categorically

---

**19.** Recognition of a work-in-progress exemption has been advocated by at least one commentator. (John T. Bandler, *The New York Rosario Rule Applied to Computerized Documents: The Rigid and Impractical Duplicative Equivalent Doctrine Requires Modification*, 22 Pace L Rev 407, 447 [Spring 2002].) It seems to this writer that any attempt to create a work-in-progress exemption is perversive to the jurisprudential history of *Rosario* and its progeny and would be difficult if not impossible to effectively police.

holds that a draft version of a witness' statement related directly to that witness' testimony on direct examination is not *Rosario* material because it is a work-in-progress. The People's position is thus not supported by case law.

## B. Doctrine of Attorney Work Product

■ Secondly, the People assert that under the attorney work product doctrine Morabito's draft is exempt from disclosure despite a "strong presumption of the discoverability of prior statements of prosecution witnesses under the *Rosario* rule." (*People v Ranghelle*, 69 NY2d 56, 63 [1986].) To be sure, the criminal court complaint must be approved by an ADA or paralegal before it is filed with the court. According to the prosecution, an interactive process occurs between the QDA professional staff and the arresting officer so as to determine if charges can and should be drawn, and if so, what information will be relevant for the criminal court complaint.[20] The result of this process is the drafting of a criminal court complaint, generally, by the QDA professional staff and not by the arresting officer. In this case, Morabito, the arresting officer, drafted the criminal court complaint without the assistance of the QDA professional staff. Morabito's draft, given these factual circumstances, could not have been infused with or reflected the mental impressions of the prosecutor. Under these circumstances, the naked assertion that Morabito's draft fell within the doctrine of attorney work product is conclusory and insufficient to shield the prosecution from disclosure of Morabito's draft complaint. Moreover, it is well established that a prosecutor's disclosure obligations under *Rosario* override any claim of work product protection. (*See People v Adger*, 75 NY2d 723, 729 [1989, Titone, J., concurring] [Moreover, the fact that data sheets "may contain information in addition to a witness' statement, such as witness evaluations, proposed plea offers, bail recommendations, or information otherwise classifiable as 'work product,' " does not exempt the document from discovery by the criminal defendant under *Rosario* (citing *People v Consolazio*, 40 NY2d 446, 453-454 [1976] [prosecutor's notes of witness interview not exempt from disclosure as work product and "prosecutor's worksheets, containing as they do abbreviated notes capsulizing witnesses' responses to questions relating directly to material issues raised on defendant's trial, fall within the reach of our holding in *Rosario*"])]; *People v Cecora*, 186 AD2d 215 [2d Dept 1992] [Early

---

**20.** Farrugia affirmation.

Case Assessment Bureau data sheet containing notes by an ADA during an interview of the arresting officer was disclosable to defense], *lv denied* 81 NY2d 786 [1993]; *People v Rayford,* 158 AD2d 482 [2d Dept 1990] [prosecution's data analysis sheet which contained statements by two prosecution witnesses did not fall within work product exemption]; *People v Smith,* 150 AD2d 275 [1st Dept 1989] [clear error by trial court to exempt from disclosure prosecution worksheet summarizing pretrial statements made to District Attorney's Office by the police officer witnesses on basis of attorney work product].) Accordingly, I find the doctrine of attorney work product is inapplicable and unavailable to the People.

## C. Doctrine of Duplicative Equivalent

Under the circumstances of this case, I find Morabito's draft of the criminal court complaint constitutes a written or recorded statement made by the officer which relates to the subject of his testimony on direct examination. As such, the draft of the criminal court complaint is *Rosario* material and should have been saved and turned over to the defendant. The People's speculative claim that only nonsubstantive or minor changes occurred to Morabito's draft is of no moment. Any document that is unavailable for judicial inspection cannot constitute a duplicative equivalent of already turned over documents.[21] (*See People v Joseph,* 86 NY2d 565, 569 [1995]; *People v Bell,* 217 AD2d 585 [2d Dept 1995].) In this regard, the People's reliance on *People v Dolan* (172 AD2d 68 [3d Dept 1991], *lv denied* 79 NY2d 946 [1992]), that the court can rely on the assurances of Morabito that no changes occurred from his draft complaint to the final version he signed, is of doubtful vitality given the Court of Appeals subsequent holding in *People v Joseph* that "[c]ontrary to the People's contention, a police officer's testimony regarding the contents of a lost or destroyed police document is not an acceptable substitute for the document itself, nor is it a sufficient basis from which the court could infer the requisite duplicative equivalence." (*Joseph* at 570.)

## D. Claim of Prejudice

■ According to the defendant, the appropriate sanction is preclusion of Morabito's testimony. In *People v Martinez* (71

---

**21.** The People argue that the initial draft is a summary of the arrest report and complaint already turned over to the defendant and thus appear to claim that the draft is a "duplicative equivalent" of information that was already disclosed. This argument is usually offered to explain the People's failure to turn over *Rosario* material. (*See People v Young,* 79 NY2d 365, 369 [1992]; *People v Gallman,* 240 AD2d 512 [2d Dept 1997].)

NY2d 937, 940 [1988]), the Court of Appeals stated that in situations in which *Rosario* documents are lost or destroyed, "[i]f the People fail to exercise care to preserve it and defendant is prejudiced by their mistake, the court must impose an appropriate sanction." The Court of Appeals also stated that the appropriate sanction to be imposed is within the sound discretion of the court. In creating such sanction, the court may consider the degree of prosecutorial fault but "the overriding concern must be to eliminate any prejudice to the defendant while protecting the interests of society." (*People v Kelly*, 62 NY2d 516, 520 [1984].)

In this case, there is no evidence of any bad faith by Morabito or the prosecutor. According to the prosecutor, Morabito's draft was routinely deleted from the ICAPS system after it was replaced by the criminal court complaint which was faxed to Morabito. The defendant's submission of an "Intake Bureau Crime Report" from an unrelated case does not demonstrate any prosecutorial misconduct or bad faith in this case. Rather that report indicates that the People have the ability to track the progress of a case after an arrest is made.

Also, the defendant has not established any prejudice. The defendant appears to speculate that the People added defendant's admission that he had been driving to the complaint rather than Morabito. At the hearing, Morabito testified the defendant was the driver of the vehicle. The defendant, in his cross-examination of Morabito, effectively sought to establish that Morabito's memory was severely faulty or that he fabricated defendant's statement that he was driving. (*See People v Kass*, 25 NY2d 123 [1969].)

In *People v Andino* (244 AD2d 194 [1st Dept 1997], *lv denied* 91 NY2d 888 [1998]), the People did not turn over the scratch copy of the investigating officer's complaint report. The appellate court found that the trial court properly exercised its discretion in not imposing a sanction against the People. The appellate court also found that no prejudice ensued in the destruction pursuant to routine procedures of the document.

Accordingly, the defendant's motion to preclude the testimony from Morabito is denied.

[Portions of opinion omitted for purposes of publication.]