OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 On direct appeal from a judgment of conviction, reversal is required when the prosecution has failed to turn over
 
 Rosario
 
 material. On CPL 440.10 motions made after direct appeal has been concluded, however, for vacatur of a conviction a defendant must demonstrate prejudice — meaning a reasonable pos
 
 *189
 
 sibility that the prosecution’s failure to make
 
 Rosario
 
 disclosure materially contributed to the verdict. This appeal raises yet another novel question in our
 
 Rosario
 
 jurisprudence: which of the two standards applies when a CPL 440.10 motion is made
 
 before
 
 a defendant’s direct appeal has been exhausted — the "per se” rule, or a requirement of prejudice? We conclude that a uniform standard governs CPL 440.10 motions, and remit to the Appellate Division to determine whether defendant has been prejudiced by the
 
 Rosario
 
 violation.
 

 Facts
 

 On the morning of February 22, 1988, defendant, wielding a knife, seized his estranged wife, Lydia Machado, as she was leaving her mother’s house in Brooklyn and threw her into his van. As defendant began to drive away, Machado’s brother, Edwin Morales, grabbed hold of the driver’s side window of the van. Morales was carried down the block until he apparently hit the pole of a street sign. Morales died a short time later as a result of internal injuries he sustained from the impact.
 

 For the next several hours, defendant drove through the triState area with Machado, forcing her onto the floor of the van, and punched and kicked her. At one point he stopped, bound her hands with a belt, gagged her and held a knife to her throat, drawing blood. Following a chase by helicopter and ground units, the police apprehended defendant in Brooklyn. Later that day, Machado spoke with the police, and at 11:00 p.m. gave an audiotaped statement to an Assistant District Attorney. Subsequently, at a hospital, she reported that her left eye and back were bruised and that she was suffering from pain in her left arm, but she was not treated for any injuries to her wrist or a knife wound on her neck.
 

 Defendant was charged with two counts of murder in the second degree (Penal Law § 125.25 [2], [3]), one count of kidnapping in the second degree (Penal Law § 135.20) and two counts of assault in the second degree (Penal Law § 120.05 [2], [6]). A jury acquitted defendant of the murder and assault with a dangerous instrument counts, but found him guilty of the kidnapping and felony assault counts. On January 4, 1990, defendant was sentenced to concurrent terms of imprisonment of 81/3 to 25 years on the kidnapping count and 21/s to 7 years on the assault count. Twenty days later, defendant filed a notice of appeal from his judgment of conviction.
 

 In August 1990, the People for the first time provided defendant with a copy of a report authored by Detective Michael
 
 *190
 
 Russell (the Russell Report), who had investigated Morales’s death and had testified for the People at trial. The report form, entitled "Brooklyn Detective Area Confidential Report,” contained instructions on how to prepare the report and a one-paragraph summary of the events of February 22, 1988, concluding with the line: "Mrs. Machado sustained minor injuries and refused Medical aid.”
 

 Defendant perfected his appeal on February 2,1992, contending that the People’s failure to deliver the Russell Report before trial constituted a
 
 Rosario
 
 violation. There was, however, no record before the court related to the claimed violation; on October 30, 1992 defendant’s motion to enlarge the record to include the Russell Report was denied by the Appellate Division. While his direct appeal was pending, on November 13, 1992 defendant filed a CPL 440.10 motion — the subject of this appeal.
 

 In his motion, defendant argued that because he had moved to vacate the judgment of conviction before exhaustion of his direct appeal, a "per se error” standard applied to the claimed
 
 Rosario
 
 violation. The People opposed the motion, contending that the Russell Report was not
 
 Rosario
 
 material and that, even if it was, defendant was required to show that he had been prejudiced by the People’s failure to disclose the report. On January 15, 1993, Supreme Court conducted a hearing on defendant’s CPL 440.10 motion, at which Russell and Machado testified.
 

 Meanwhile, on December 28, 1992, the Appellate Division unanimously affirmed defendant’s conviction (188 AD2d 665), noting that the Russell Report was not part of the appellate record and that defendant’s
 
 Rosario
 
 claim would more appropriately be raised by a CPL 440.10 motion. On March 16, 1993, defendant’s application for leave to appeal to this Court was denied (81 NY2d 888).
 

 Months later, Supreme Court denied defendant’s CPL 440.10 motion (159 Misc 2d 94), concluding that the report was not
 
 Rosario
 
 material and that even if it was defendant failed to demonstrate a reasonable possibility that nondisclosure contributed to the verdict. On defendant’s appeal, the Appellate Division reversed and vacated the conviction (228 AD2d 700). The court held that the Russell Report was
 
 Rosario
 
 material, and that, because defendant’s CPL 440.10 motion was filed before exhaustion of his direct appeal, the violation itself required reversal. A Judge of this Court granted the People’s leave application.
 

 
 *191
 
 In this Court, the People have abandoned their claim that the Russell Report was not
 
 Rosario
 
 material. Thus, the issue before us is the standard applicable to
 
 Rosario
 
 violations raised by CPL 440.10 motions before exhaustion of defendant’s direct appeal.
 

 Analysis
 

 Motivated by the "right sense of justice,” this Court 36 years ago in
 
 People v Rosario
 
 (9 NY2d 286, 289,
 
 cert denied
 
 368 US 866) established a new rule regarding the disclosure of statements by prosecution witnesses. Before
 
 Rosario,
 
 a trial court determined which documents were relevant to the defense and ordered production accordingly; where discovery was erroneously denied the appellate court applied a harmless error test.
 
 Rosario
 
 changed the practice by requiring the People to turn over pretrial statements of prosecution witnesses, leaving it for the single-minded counsel for the accused rather than trial courts to determine the value of those statements to the defense.
 

 With harmless error still the standard, this equilibrium continued for 15 years, until
 
 People v Consolazio
 
 (40 NY2d 446,
 
 cert denied
 
 433 US 914).
 
 Consolazio
 
 articulated a rule of per se reversal, in order to assure the People’s scrupulous adherence to their obligation to turn over
 
 Rosario
 
 material (40 NY2d at 454, supra;
 
 see also, People v Jones,
 
 70 NY2d 547, 551-553;
 
 People v Perez,
 
 65 NY2d 154, 159-160). The price for the People’s failure to disclose prior statements of their own witnesses thus became automatic reversal of the conviction, a standard this Court has continued during the past two decades to apply to
 
 Rosario
 
 claims raised on direct appeal
 
 (see, e.g., People v Banch,
 
 80 NY2d 610;
 
 People v Young,
 
 79 NY2d 365;
 
 People v Ranghelle,
 
 69 NY2d 56).
 

 In formulating these principles, which balanced the various societal and individual interests involved, the Court was guided solely by its own precedents, as a matter of common law. Although the Legislature codified the
 
 Rosario
 
 rule (CPL 240.45 [1] [a]), it prescribed no other standard of review.
 

 People v Jackson
 
 (78 NY2d 638), however, presented a different calculus. In
 
 Jackson,
 
 the Court was asked to decide whether the automatic reversal rule also should apply to
 
 Rosario
 
 claims raised in a CPL 440.10 motion, after defendant’s direct appeal had been concluded — in that case a full three years after defendant’s direct appeal had been exhausted. There, for the
 
 *192
 
 first time the Court was faced with the task of harmonizing the common-law
 
 Rosario
 
 rule with a statute, the enactment of a coequal branch of government: Noting that
 
 Rosario
 
 was not based on State or Federal constitutional principles, but rather on our own balancing of interests, we acknowledged in
 
 Jackson
 
 that CPL 440.10 involved new policy considerations.
 

 As determined in
 
 Jackson,
 
 the controlling statute is CPL 440.10 (1) (f), which provides that a judgment may be vacated on the ground that the conduct at issue is "improper and prejudicial.” Thus, the Court observed, the statute explicitly affords a remedy only if the defendant can demonstrate prejudice. Moreover, just as the
 
 Rosario
 
 rule reflected the Court’s balancing of interests, CPL 440.10 represented the Legislature’s own weighing, and reflected the Legislature’s overriding concern about society’s interest in the finality of judgments. Agreeing with the Legislature that this finality interest was "formidable,” and concluding that fairness to defendants would not be unduly compromised by an inquiry into prejudice, we refused to "eviscerate the language of CPL 440.10 (1) (f)” and held that a prejudice standard — not a per se rule — was applicable to
 
 Rosario
 
 violations raised by postappeal CPL 440.10 motions
 
 (People v Jackson,
 
 78 NY2d, at 647,
 
 supra).
 

 The issue before us concededly presents yet another balance of factors, and neither party offers a wholly satisfactory answer as to where the line should be drawn. We are persuaded, however, that the better course is to apply
 
 Jackson: Rosario
 
 claims raised by way of CPL 440.10 motions made before direct appeal is exhausted should be rejected unless the violation prejudiced defendant.
 

 As in
 
 Jackson,
 
 analysis centers on the relevant statute, and the requirement of prejudice in CPL 440.10 (1) (f). Courts, of course, cannot broaden the scope of the remedy afforded by CPL 440.10 beyond what the Legislature unambiguously specified (78 NY2d at 641, 647-648,
 
 supra;
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 73, at 149-150). To adopt defendant’s argument, moreover, would give the word "prejudicial” in CPL 440.10 (1) (f) one meaning in a preappeal context and another in a postappeal context. Thus, "fulfilling our duty as common-law Judges to interpret statutory language” (78 NY2d at 647,
 
 supra),
 
 we conclude that the unambiguous terms of CPL 440.10 (1) (f) require that a defendant making a CPL 440.10 motion— preappeal or postappeal — seeking to vacate a judgment of conviction on
 
 Rosario
 
 grounds demonstrate prejudice resulting from the violation.
 

 
 *193
 
 We recognize that society’s interest in the finality of a judgment of conviction is different when defendant’s direct appeal is pending from when defendant’s appeal has been concluded. Of greater concern, however, is the language of the statute and the anomaly in its interpretation that would result were we to accept defendant’s argument. Apart from the fact that defendant’s interpretation would ascribe two different meanings to the very same statutory word, an anomaly would arise from variations in the amount of time it takes to resolve an appeal in the Appellate Divisions. Where the appellate backlog is greater a defendant would have an increased opportunity for per se reversal. Application of CPL 440.10 (1) (f) should be uniform, wherever defendant’s appeal is pending.
 

 Additionally, we are satisfied that the test of prejudice in the
 
 Rosario
 
 context — a "reasonable possibility” that the nondisclosure materially contributed to the verdict — safeguards both the interest in fairness to defendants and the interest in assuring the People’s careful discharge of their disclosure obligation. The "reasonable possibility” test is, after all, "perhaps the most demanding test yet formulated” for harmless error analysis
 
 (see, People v Crimmins,
 
 36 NY2d 230, 240-241). And we have recognized that the "reasonable possibility” test "properly encourages compliance” with the People’s
 
 Brady
 
 obligations
 
 (People v Vilardi,
 
 76 NY2d 67, 77). That should be no less true with respect to the People’s
 
 Rosario
 
 obligations.
 

 As a final argument in favor of a per se standard defendant contends that
 
 People v Novoa
 
 (70 NY2d 490) — which preceded
 
 Jackson
 
 — is controlling. However, as is abundantly clear from the Court’s opinion, in
 
 Novoa
 
 the Court was not asked to determine, nor did it, what standard of review should apply to CPL 440.10 motions.
 
 Jackson
 
 represented the next step in the progression of these cases, putting before us the question whether
 
 Rosario
 
 claims raised in a postappeal CPL 440.10 motion — like those raised on direct appeal — were subject to the per se error rule. While defendant points to language in
 
 Jackson
 
 describing
 
 Novoa,
 
 the fact remains that the issue we now confront simply was not before us in
 
 Novoa
 
 or in
 
 Jackson.
 
 Resolving for the first time the question of the legal standard applicable to CPL 440.10 motions made
 
 before
 
 defendant’s appeal has been exhausted, we decide in favor of uniformity for CPL 440.10 motions.
 

 It remains for us to apply that legal standard to the facts before us. Because the Appellate Division ruled that the People’s failure to disclose the Russell Report warranted
 
 *194
 
 automatic vacatur of defendant’s conviction, the court did not determine whether that failure, in fact, prejudiced defendant. The case must therefore be remitted to the Appellate Division for a determination of whether there was a reasonable possibility that failure to turn over the
 
 Rosario
 
 material contributed to the verdict against defendant
 
 (People v Jackson,
 
 78 NY2d at 650,
 
 supra).
 

 Accordingly, the order of the Appellate Division should be reversed, and the case remitted to the Appellate Division, Second Department, for further proceedings in accordance with this opinion.
 

 Judges Titone, Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order reversed, etc.