People v Solomonidis (2023 NY Slip Op 51438(U))

[*1]

People v Solomonidis

2023 NY Slip Op 51438(U)

Decided on December 29, 2023

County Court, Genesee County

Cianfrini, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 29, 2023
County Court, Genesee County

The People of the State of New York,

against
Gregory R. Solomonidis, Defendant.

Docket No. SMZ-70253-22/001

Assistant District Attorney William G. Zickl
Attorney for Appellant
Leah Farwell, Esq.
Attorney for Defendant/Respondent

Melissa Lightcap Cianfrini, J.

The People appeal from a Decision and Order of the Batavia City Court (Honorable Durin B. Rogers, J.) dated April 28, 2022, which granted the Defendant Gregory R. Solomonidis' (hereinafter, "the Defendant" or "Mr. Solomonidis") motion to dismiss for denial of speedy trial and thereby dismissed two counts of Driving While Intoxicated ("DWI") per Vehicle and Traffic [*2]Law ("VT&L") §§ 1192(2) and (3). The People timely appealed. 
 Factual Background/Procedural History
The Defendant was charged with two counts of DWI in violation of VTL §§ 1192(2) and (3) for allegedly operating a motor vehicle while he was intoxicated on July 3, 2021 in the City of Batavia. The Defendant was issued a Notice to Appear in Batavia City for these charges on July 20, 2021. Mr. Solomonidis appeared in court without counsel and requested an adjournment to obtain the same. He was directed by Batavia City Court (hereinafter, "City Court") to re-appear in court on July 23, 2021 and was arraigned on the charges. Pursuant to CPL §30.30 (7)(b), this action commenced on July 20, 2021 with the Defendant's first appearance in Court.
The People filed their first certificate of compliance (hereinafter generally referred to as a "COC") on August 26, 2021. After inquiry, the City Court found the People's COC and statement of readiness were valid on September 23, 2021.
Defense counsel filed an omnibus motion on September 17, 2021. The People filed their Answering Affirmation by First Assistant District Attorney Joseph Robinson ("1st ADA Robinson") affirmed on October 8, 2021. There was an appearance on October 21, 2021. The City Court denied Defendant's motion, which sought dismissal pursuant to CPL §§ 170.30 and 30.30 due to the People's alleged failure to turn over certain 911 recordings and Call for Service ("CFS") records, and ordered the People to provide the same to defense counsel by October 26, 2021. The recording was turned over 2 days later on October 22, 2021, when the People filed a supplemental COC providing law enforcement's CFS records and a copy of the 911 audio. Defense counsel, thereafter, filed what was titled a "notice of motion to re-argue and post argument submission" on November 15, 2021, asserting the People's declaration of readiness was illusory because the People failed to provide mandatory discovery material pursuant to CPL § 245.20 and also failed to provide "50-a" material allegedly in violation of CPL § 245.20(1)(k) and Brady v. Maryland, 373 US 83. The People filed their Answering Affirmation sworn to by 1st ADA Robinson on November 15, 2021.
The parties stipulated to a Huntley hearing, which was held on November 30, 2021. 1st ADA Robinson appeared on behalf of the People. During that hearing, Batavia Police Officer Samuel Freeman ("Officer Freeman" or "the Officer") was called by the People to testify. On cross-examination by defense counsel, information related to Officer Freeman's prior law enforcement employment was explored and it was revealed that Officer Freeman testified he left the Perry Police Department's ("PPD") employment due to a "Snapchat incident". The defense had not been provided any information relating to this incident. The prosecutor seemed to be unaware of this alleged incident relating to the Officer at the hearing.
As a result of Officer Freeman's testimony and at the conclusion of the Huntley hearing, City Court granted defense counsel's request to reargue his November 15, 2021 motion to strike the People's certificate of compliance as illusory for failure to comply with CPL §245.20(1)(g) as it relates to electronic communications and for failure to turn over "50-a" material in compliance with CPL § 245.20 (1)(k) and Brady v. Maryland, 373 US 83, due to the Prosecutor's failure to provide information regarding the reason for the Officer's departure from the PPD. On February 28, 2022, City Court invalidated the People's COC by a Decision and Order due to the People's failure to timely disclose the 911 recordings pursuant to CPL § 245.20(1)(g).
The People filed a "supplemental" COC and statement of readiness on March 28, 2022 [FN1]
. Defendant argued again that no valid certificate was filed so there was nothing to supplement. The City Court validated the supplemental certificate and statement of readiness on April 6, 2022.
Prior to invalidating the Supplemental COC and Statement of Readiness, City Court inquired about the People's efforts to obtain the "Snapchat incident" records on March 1, 2022. Assistant District Attorney ("ADA") Jenna Bauer appeared on behalf of the People. At this appearance, this ADA stated that no efforts had been made to obtain this information. (See 3.1.2022 Transcript at P. 9) On March 17, 2022, ADA Bauer sought an extension from City Court of another week to obtain the requested information and stated, "I have started my inquiry with the Perry Police Department." (See 3.17.2022 Transcript at P.5)
On March 25, 2022, ADA William Zickl appeared and stated that "with respect to the diligence that was exercised by Ms. Bauer, my office is right next to her's. And, I know from personal knowledge that she spent quite a bit of time on the phone with agents from the Village of Perry attempting to obtain the information that we ultimately received in this letter. And, she was very clear and explicit what we needed from them, and this is what they produced." ( See 3.25.22 Transcript at P.3) On or about, March 28, 2022, the People received a letter from the Village of Perry regarding the "Snapchat incident" and filed a Supplemental COC.
City Court then issued its Decision and Order on April 28, 2022, dismissing the charges pursuant to CPL § 30.30.

Legal Analysis
New York reformed its criminal discovery laws by the passage of CPL Article 245, which established new, accelerated timelines for the sharing of evidence between the prosecution and the defense during the pretrial period. The new law required "automatic discovery" of information under CPL § 245.20 (1)(a)-(u), directed that district attorneys establish a "flow of information" with law enforcement per CPL § 245.55, and set specific timeframes for the sharing of evidence between the prosecution and defense during the pretrial period under CPL § 245.10. 
CPL § 245.20(1) requires the prosecution to "disclose to the Defendant, and permit the Defendant to discover, inspect, copy photograph and test, all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction and control." CPL § 245.20(1) (emphasis supplied). When the Prosecutor has complied with § 245.20(1), he/she shall serve upon the Defendant and file with the court a certificate of compliance (a/k/a "COC"). 

 Readiness for Trial and "Proper" COCs
Unless the court makes an "individualized finding of special circumstances," the People "shall not be deemed ready for trial until they have filed a proper COC pursuant to CPL § 245.50(1) CPL § 245.50(3). Consequently, a "proper" COC is a prerequisite to the filing of a valid statement of readiness for trial. Under CPL § 245.50(1), a "proper" COC shall include a statement by the prosecutor that "after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, [the prosecutor] has disclosed and made available all known material and information subject to discovery." [*3]CPL § 245.50(1)(emphasis added). Where a Defendant challenges the People's COC for late discovery, the People must demonstrate to the Court what due diligence and reasonable inquiries were made in order to demonstrate that the COC was "proper" as required under CPL § 245.50. See People v. Rodriguez, 73 Misc 3d 411, 417 (Sup. Ct. Queens Cty. 2021), People v. Morgan, 77 Misc 3d 1214 (Sup. Ct. Queens Cty. 2022). "This may be accomplished by recounting the steps they took to obtain certain materials or ascertain the existence thereof, explaining the reasons why particular items are outstanding, lost or destroyed, and submitting their good faith arguments for why certain materials are not discoverable under the statute." Rodriquez, 73 Misc 3d at 417. The People's COC is next evaluated under the standard of whether, despite the late discovery, it was filed in good faith and reasonable under the circumstances. People v. Gaskin, 214 AD3d 1353, 1355 (4th Dep't. 2023). 
If the prosecution learns of additional material or information that should have been disclosed as part of automatic discovery under CPL § 245.20, "it shall expeditiously notify the other party and disclose the additional material and information as required for initial discovery under this article." People v. Henry, 74 Misc 3d 1230(A) (Sup. Ct., Richmond Cty. 2022). Discovery reform contemplated situations where not every single item of discovery would be turned over prior to the filing of a COC and provided for supplemental COCs under CPL § 245.50(1). The discovery statutes should not be an "inescapable trap" for the prosecution (People v. Erby, 68 Misc 3d 625, 633 [Sup. Ct. Bronx. Co. 2020]) or a game of "gotcha" (People v. Ferrer, 72 Misc 3d 1212(A)(Crim. Ct. Bronx Co. 2021). 
Notably, the CPL provided that "no adverse consequence to the prosecution or the prosecutor shall result from the filing of a [COC] in good faith and reasonable under the circumstances." As such, the fact that the prosecution provides discovery belatedly does not automatically result in the COC being illusory. In fact, "numerous courts have found that belated disclosures should not invalidate a [COC] that was made in good faith after the exercise of due diligence where the delay resulted from, for example, minor oversights in the production of material, delayed discovery of the existence of certain items or a good faith position that the material in question was not discoverable." Rodriquez, 73 Misc 3d at 416 citing People v Bruni, 71 Misc 3d 913 (Cty. Ct. Albany Co. 2021); People v. Erby, 68 Misc 3d at 633; People v. Knight, 69 Misc 3d 546, 552 (Sup. Ct. Kings. Co. 2020); People v. Lustig, 68 Misc 3d 234, 247 (Sup. Ct. Queens Co. 2020); People v. Randolph, 69 Misc 3d 770, 770 (Sup. Ct. Suffolk Co. 2020) and People v. Davis, 70 Misc 3d 467, 474-80 (Crim. Ct. Bronx Co. 2020). 
At the same time, if the People are unsure of how or what to disclose, Article 245 provides accommodation or relief regarding untenable discovery difficulties in a particular case. By way of example, CPL § 245.10(1)(a) allows for an extension of time to provide additional discovery where materials are exceptionally voluminous; CPL § 245.50(3) permits trial readiness even where discoverable evidence is "unavailable"; CPL § 245.70(2) permits modification of discovery for good cause shown; and CPL § 245.70(1) provides for protective orders to deny, restrict, condition or defer disclosure of any discovery. Moreover, CPL § 30.30 (4)(g) allows for the exclusion of chargeable time to the People where the delay is caused by the unavailability of evidence that the People have diligently attempted to obtain and disclose.

911 Records & Motion to Dismiss Pursuant To CPL § 30.30
As a threshold matter, the 911 recordings at the center of this dispute fall within the category of "automatic discovery" pursuant to CPL § 245.20(1)(g). Central to this Court's analysis is a review of the statutory language of CPL § 245.20(1), which provides, in pertinent [*4]part, as follows:
. . . . The prosecution shall disclose to the defendant and permit the defendant to discover, inspect, copy, photograph and test, all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control . . . .
CPL § 245(1) (emphasis supplied). The Legislature did not define the term "disclose" for purposes of Article 245 nor under CPL § 1.20. The key issue is what did the Legislature intend when it directed the prosecution to "disclose" discoverable materials to the defense. Article 245 does not direct or dictate the method or manner of how the prosecution is to provide discovery to defendants in criminal cases. 
It is axiomatic that "the governing rule of statutory construction is [ ... ] courts are obliged to interpret a statute to effectuate the intent of the Legislature, and when the statutory language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of the words used" (People v. Brown, 25 NY3d 247, 250, 32 N.E.3d 935, 937 (2015) citing People v. Williams, 19 NY3d 100, 103, 945 N.Y.S.2d 629, 968 N.E.2d 983 [2012], quoting People v. Finnegan, 85 NY2d 53, 58, 623 N.Y.S.2d 546, 647 N.E.2d 758 [1995] ). Additionally, Courts may not, as a matter of statutory construction, broaden the scope of a statute beyond the words used by the legislature (see People v. Machado, 90 NY2d 187, 192, 659 N.Y.S.2d 242, 681 N.E.2d 409 [1997]).
The term "disclosure" has been defined by Black's Law Dictionary as "to make known, a revelation, or the uncovering a thing that is kept hidden." 
https://thelawdictionary.org/disclosure/ (emphasis supplied). 
The People attached to its initial COC a document entitled "Compliance Report for Discovery Package: 08/16/2021", which identified the specific items that were being sent through the digital management system (a/k/a "DEMS") to defense counsel. R.'s SA at p. 15. The initial COC also identified the existence of "Dispatch Center audio recordings" with specific instructions to email the District Attorney's paralegal, Jessica Carlson, at Jessica.Carlson@co.genesee.ny.us if defense counsel wanted copies of those audio recordings. R.'s SA at p. 12. On October 20, 2021, defense counsel renewed his argument at a status appearance in City Court that the People failed to comply with discovery under CPL § 240.20 by not providing copies of the "911 calls". The prosecutor responded that the existence of such recordings was disclosed to counsel as part of the People's initial COC and had not, until that day in court, received a request for such recordings. Thereafter, a mere two days later on October 22, 2021, the People filed a Supplemental COC, which indicated that a copy of the Dispatch Center recordings were provided to defense counsel through DEMS. At the oral argument held on November 30, 2021, a prosecutor, who was a former dispatcher at the Genesee County Sheriff's Emergency Dispatch Center ( hereinafter "Dispatch Center"), set forth in detail the reasons why this procedure had been established given the Dispatch Center's system of recording 911 calls and dispatch, the difficulty of retrieving this information given such system, and the lack of available trained employees to perform such collection tasks while simultaneously and efficiently handling incoming 911 calls and dispatch as required. 
Given the Legislature's intent, following the cannons of statutory construction and the emerging trends in the case law, this Court finds that the Dispatch Center's audio recordings were timely disclosed within the time periods set forth under CPL Article 245 as the People had [*5]"made known" to the defense the existence of such recordings and how to obtain copies of the same. 
Accordingly, this Court finds, under the facts of this case, that the People's initial COC and Statement of Readiness were made in good faith by the prosecutor with respect to the 911 calls and dispatch. Further, the initial COC and SRT were reasonable under the circumstances regarding this item of discovery. Firstly, CPL § 240.20(1) does not specifically direct or define a disclosure or delivery method. The People cannot be said to have violated CPL § 240.20(1) as they complied by "disclosing" to the Defendant the existence of such recordings. Secondly, once the People were notified that defense counsel wanted copies of those recordings, the copies were provided expeditiously within 2 days of the request. Lastly, the People relied upon a good faith interpretation that identifying the existence of and providing instructions on how to obtain the recordings were in accord with their duties under CPL § 245.20(1)(k). To rule otherwise where the People complied in good faith and reasonably under the circumstances would be patently unjust and have the unintended effect of turning the discovery process into a game of "gotcha."

Police Officer's Snapchat Incident & Motion to Dismiss Pursuant to CPL § 30.30
The second issue raised in this case is whether the People's COC and Supplemental COCs were "proper" with respect to lack of timely identification and disclosure of the Officer's "Snapchat incident." It is unquestionable that the People are required to automatically disclose all evidence and information, including that which is known to law enforcement agencies acting on behalf of the government that tends to "impeach the credibility of a testifying prosecution witness". See CPL § 245.20(1)(k)(iv). 
On November 30, 2021, a Huntley hearing was held in City Court. During cross examination by defense counsel, the Officer testified under cross-examination that he had left the employment of PPD due to his violation of the PPD's Snapchat policy. Transcript of City Court proceedings dated 11.20.21 at p. 10, l.6 — 11. He further testified that he did not receive any disciplinary action for this violation. See id. During the course of the hearing, defense counsel renewed his objection to the lack of automatic discovery with respect to law enforcement disciplinary records. Defense counsel referred to these records as "50-A materials" on the record. The People did not seem aware at the hearing of any information relative to the Officer's Snapchat incident while employed by PPD. 
Despite the request for these materials on November 30, 2021, the People did not provide any information from the PPD or any other governmental agency regarding Officer Freeman's departure from that agency until March 28, 2022. On that date, the People filed a supplemental COC producing a letter from the Perry Village Clerk regarding the incident. (R. App. at pp. 113 - 114). 
The District Attorney' s Office is statutorily responsible to ensure that a "flow of information" exists between law enforcement and the prosecutors. Specifically, the District Attorney or the assistant assigned to the case "shall endeavor to ensure that a flow of information is maintained between the police and . . . his or her office sufficient to place within his or her possession or control all material and information pertinent to the defendant . . . [including] any evidence or information discoverable under [CPL § 245.20 (1)(k)]." CPL § 245.55(1). That obligation does not end at the county line even if law enforcement agents are located in other jurisdictions. The obligation exists even if the information is or is not in tangible form and [*6]irrespective if the prosecutor credits the information. CPL § 245.20(1)(k). 
Emerging case law breaks into two different camps with respect to evaluating a prosecutor's COC: (1) the first group of cases analyze the first statement of compliance — those certifying the efforts to "ascertain the existence of discovery" and (2) the second group of cases deal with the second statement of the COC — those certifying that the Prosecutor has "disclosed and made available all known discoverable materials." See generally, People v. Marte, — NYS3d —, 2023 NY Slip Op. 23404 (Crim. Ct., NYC, Queens County, 12/23/23). 
The Court of Appeals recently clarified in People v. Bay, 2023 WL 8629188 (Ct of Appeals 12/14/2023), the first group of cases dealing with the steps a Prosecutor must take to demonstrate that he/she has "exercised due diligence and ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery" [CPL § 245.50(1)]. While the discovery statute does not define "due diligence", the Court noted that it is a "familiar and flexible standard that requires the People 'to make reasonable efforts' to comply with statutory directives." The Court further relied on Black's Dictionary to define "due diligence" as "the diligence reasonably expected from, and ordinarily received by a person who seeks to satisfy a legal requirement or to discharge an obligation." Bay, 2023 WL 8629188 at p.*5 (internal citations omitted). Whether the People meet that given standard will depend upon the circumstances of each case. 
The Bay Court directed that courts should generally consider, inter alia, the efforts made by the prosecution to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious the missing materials would have likely been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised for any missing discovery. 
While the case is not complex nor the discovery materials voluminous, the record, including the Appellant's Brief, is absolutely silent as to the steps the various prosecutors assigned to this case took to ensure that it had ascertained the existence of all discoverable information as it relates to impeachment materials, most notably the "Snapchat incident". There is no explanation as to why the People were unaware of these potential impeachment materials. It is nearly impossible for this Court to gauge how obvious the missing materials would have been given the dearth of information provided by the People. Moreover, the People provided a letter from the Perry Village Clerk . No letter was received from the PPD itself.
Furthermore, the People misapprehend their duty. It extends to any information whether in tangible form or not. CPL § 245.20(1)(k). Clearly from Officer Freeman's testimony, he violated the PPD's Snapchat policy. It is indisputable that he admitted that he resigned due to violating that department's policy. 
The case at bar is unlike People v. Godfred, 77 Misc 3d 1119 (2022). In Godfred, that court noted that the Assistant District Attorney described her efforts to obtain and share the required discovery prior to filing her COC. She had sent nine emails to different NYPD members requesting required materials; she continued her efforts to obtain the complete IDTU video included going up the chain of command to contact the NYPD Lieutenant. The ADA demonstrated that when counsel alerted her to the missing items more than two months later, she promptly investigated and provided the missing items. There was no evidence that the ADA knew of or intentionally withheld any required materials that were not timely provided. People v. Cooper, 71 Misc 3d 559, 143 N.Y.S.3d 805 [Erie County Court 2021). 
Unlike the prosecutor in Godfred, no clear record was made by any of the prosecutors [*7]assigned to this case as to specifically whom at the PPD was contacted to obtain the information (such as the police chief or supervising officer), method(s) of contact and attempted contact, or if they even spoke with the Officer himself about the violation after learning about it.[FN2]
Clearly, individuals within the PPD and Officer Freeman himself had information regarding this violation. 
Given the lack of record of the efforts taken to ascertain the existence of the Snapchat incident, this Court is constrained to find that the prosecutors [FN3]
 did not exercise due diligence or make reasonable inquiries to discover the existence of the same. Thus, the initial COC and any subsequently filed COC were illusory, and the People were not ready for trial. 
Even if this Court was to determine that the "Snapchat incident" was not "obvious missing material" or "belated discovery", the People's failure to obtain any information for 115 days after the initial request demonstrates that the prosecution did not have a "flow of information" established with law enforcement to obtain information relating to this event. Moreover, their efforts to identify information in any form whether tangible or not was woefully inadequate. Then after the passage of 115 days to file a letter from the Perry Village Clerk (not even from the PPD) indicating that "no records" were found demonstrates a clear misapprehension of their duty to find the information whether it exists in written form or not. Accordingly, on this record, the prosecutors failed to exercise due diligence or make reasonable inquiries to determine the existence of information, not just written records. As such, their COC and any subsequent COC were illusory and must be struck. As a result of this finding, the entire 115 days are chargeable to the People. See also, CPL § 30.30(4)(g). The People were not trial ready and violated Defendant's right to a speedy trial under CPL § 30.30 by not being ready for trial within the statutory time frame. 
Therefore, this Court affirms the City of Batavia Court's Decision and Order dated April 28, 2022 striking the People's COCs due to being illusory and affirms the dismissal of the accusatory instruments in this case, but for other reasons set forth herein.
The foregoing constitutes the Decision and Order of this Court. 
DATED: December 29, 2023
Batavia, New York
HON. MELISSA LIGHTCAP CIANFRINI
Genesee County Court Judge

Footnotes

Footnote 1:The "supplemental" COC listed only two items and did not list the original material provided to the defense in the first COC, which had been struck. 

Footnote 2:ADA Zickl's generic statements to City Court regarding another ADA's efforts to obtain information about the Snapchat incident did not meet the exacting standards set forth in Bay and were unreasonable and not diligent under the circumstances pursuant to CPL § 245.50(1). 

Footnote 3:This Court is not assessing fault with any one particular prosecutor. It appears from this record that this case had been re-assigned to a variety of prosecutors on different occasions, which may have led, in part, to the delay in obtaining the information sought and documenting the efforts to retrieve such information.